Kevin T. Simon - SBN 180967
THE LAW OFFICES OF KEVIN T. SIMON, APC.
21241 Ventura Blvd., Suite 253
Woodland Hills, CA 91364
Tel: (818) 783-1674
Fax: (818) 783-6253
Email: kevin@ktsimonlaw.com

Attorney for Debtor,
Faissel Vincent Farhi

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br>FAISSEL VINCENT FARHI,<br><br>Debtor | CHAPTER 13<br>CASE NO.: 2:26-bk-12374-WB |
| FAISSEL VINCENT FARHI,<br><br>Movant<br>vs.<br><br>EVERLY FITZGERALD c/o KURT RAMLO, RAMLO LAW, their Successors and/or Assigns<br><br>Respondent | **MOTION OBJECTING TO CLAIM #8-1 OF EVERLY FITZGERALD C/O KURT RAMLO, RAMLO LAW; REQUEST CLAIM NOT BE PAID PENDING RESOLUTION OF THE ACTION; DECLARATION OF KEVIN T. SIMON IN SUPPORT THEREOF**<br><br>DATE: November 18, 2026<br>TIME: 1:30 pm<br>PLACE: Ctrm. 1375<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE, CHAPTER 13 TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Faissel Vincent Farhi (hereinafter "Debtor") hereby objects to Proof of Claim of #8-1 of Everly Fitzgerald c/o Kurt Ramlo, Ramlo Law, their Successors and/or Assigns (hereinafter

"Respondent") filed in the within case as follows:

## I. STATEMENT OF FACTS

The Debtor filed the instant case on March 12, 2026.

The Debtor is currently involved in a state court action in a case filed against him by a former employee, Everly Fitzgerald who is represented within the bankruptcy proceeding by Kurt Ramlo at Ramlo Law.

On or about May 21, 2026, Respondent filed a Proof of Claim (herein "Claim"), in the unliquidated amount of $5,000,000.00 with regard to a pending state court action. (Attached to the Declaration of Kevin T. Simon as Exhibit "A" is a true and correct copy of Proof of Claim #8-1 filed by Respondent, including the original Complaint.).

The Claim relates to a pending state court action, filed by Respondent on December 22, 2023 with complaint case number 23STCV31387; Everly Fitzgerald v. Zellij Gallery Inc. and Faissel Farhi. The Claim specifically states that it is an unliquidated claim. This state court action is currently stayed as no Motion for Relief has been filed at this time.

On or about June 15, 2026, Respondent filed an Adversary proceeding: Complaint to Determine Non-Dischargeability of Debtor Under 11 U.S.C. §§ 1328(a)(4), 523(a)(2)(A), and 523(a)(4) (hereinafter "Adversary"). The Adversary case number is 2:26-ap-01154-WB. (Attached to the Declaration of Kevin T. Simon as Exhibit "B" is a true and correct copy of Adversary proceeding.). The Adversary remains pending at this time, with a status hearing scheduled for November 10, 2026 at 2:00 pm.

All litigation remains pending at this time. No judgment has been rendered. No determination or ruling has been made thereon. Ergo, the Debtor hereby objects to the Claim on

the grounds that the total amount of $5,000,000.00 is unliquidated, an alleged amount, which the Court has yet to rule on, and which the Adversary proceeding has not yet been adjudicated.

Thus, the Claim is disputed, has not yet been adjudicated, and is unliquidated. Accordingly, the Debtor requests that Respondent's Claim not be paid by this Court pending resolution of the litigation. After resolution of litigation, if it is found that Respondent is entitled to any funds, Respondent may amend their Claim accordingly.

## II. <u>ARGUMENT</u>

### A. RESPONDENT CANNOT MEET ITS BURDEN OF PROOF TO PROVE ITS CLAIM BY A PREPONDERANCE OF THE EVIDENCE.

Upon objection to a proof of claim, once the moving party produces evidence and shows facts tending to defeat a claim, the ultimate burden of proof lies with the claimant to establish the validity of the claim based on a preponderance of the evidence. *In re Polo Club Apartments Associates Ltd. Partnership*, 150 B.R. 840 (1993), Bankr. Rule 3001(f). If the Debtor meets the burden of presenting evidence to rebut the presumed primae facie validity of a creditor's claim, then the creditor must present evidence to prove the claim and the ultimate burden of proof is therefore on the creditor to prove the claim. *In re MacFarlane*, 83 F.3d 1041-43 (9th Cir. 1996), citing In re Holm, 931 F.2d 620, 623 (9th Cir. 1991), and *U.S. v. Sampsell*, 224 F.2d 721, 722-23 (9th Cir. 1955). Thus, since the evidence presented herein rebuts the presumed validity of the Claim, Respondent bears the ultimate burden of proof to show the validity of the Claim.

In this matter, the State Court lawuit is currently pending and no judgment has been rendered. No determination or ruling has been made thereon. The Adversary proceeding is also currently pending and no judgment has been rendered. No determination or ruling has been made thereon. Thus, the claim amount of $5,000,000.00 is an alleged amount, which the Court

has yet to rule on. Therefore, the Claim is disputed, contingent and unliquidated. Accordingly, the Debtor requests that Respondent's Claim not be paid pending resolution of the lawsuit. Upon resolution, if Respondent prevails and is owed funds, Respondent may promptly amend their claim accordingly.

### B. <u>RESPONDENT'S FAILURE TO RESPOND</u>.

In the event Respondent does not respond to Debtor's objection, the failure of the claimant to file written opposition at least 14 days prior to the hearing as required by LBR 3007-1(b)(6) is considered as consent to the sustaining of the objection. See LBR 9013-1(h); In *re Lua*, 529 B.R. 766 (Bankr. C.D. Cal. 2015). Id at 771-772. "Any opposition or response to a motion must be filed not later than 14 days before the hearing date. LBR 9013-1(f). Failure to file a timely response may be deemed consent to the court granting the motion. LBR 9013-1(h); *Ghazali v. Moran*, 46 F.3d52, 53 (9th Cir.1995) et seq." Id at 771-772. As such, if Respondent fails to respond, Debtors request the Court Sustain the Objection.

## III. <u>CONCLUSION</u>

Therefore, based on the foregoing statutory and decisional authority, it is respectfully requested Respondent's Claim not be paid pending resolution of this matter. Upon resolution, if Respondent prevails and is owed funds, Respondent may promptly amend their claim

accordingly.

Dated: October 19, 2026

By:____________________________
KEVIN T. SIMON
Attorney for Debtor
Faissel Vincent Farhi

**DECLARATION OF KEVIN T. SIMON IN SUPPORT OF OBJECTION TO CLAIM**

I, Kevin T. Simon, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all the below statements.

1. The Law Offices of Kevin T. Simon, APC, represents the Debtor, Faissel Vincent Farhi, Case Number: 2:26-bk-12374-WB, which was filed on March 12, 2026.

2. The Debtor is currently involved in a state court action in a case filed against him by a former employee, Everly Fitzgerald who is represented within the bankruptcy proceeding by Kurt Ramlo at Ramlo Law.

3. On or about May 21, 2026, Respondent filed a Proof of Claim (herein "Claim"), in the unliquidated amount of $5,000,000.00 with regard to a pending state court action. (Attached hereto as Exhibit "A" is a true and correct copy of Proof of Claim #8-1 filed by Respondent, including the original Complaint.).

4. The Claim relates to a pending state court action, filed by Respondent on December 22, 2023 with complaint case number 23STCV31387; Everly Fitzgerald v. Zellij Gallery Inc. and Faissel Farhi. The Claim specifically states that it is an unliquidated claim. This state court action is currently stayed as no Motion for Relief has been filed at this time.

5. On or about June 15, 2026, Respondent filed an Adversary proceeding: Complaint to Determine Non-Dischargeability of Debtor Under 11 U.S.C. §§ 1328(a)(4), 523(a)(2)(A), and 523(a)(4) (hereinafter "Adversary"). The Adversary case number is 2:26-ap-01154-WB. (Attached hereto as Exhibit "B" is a true and correct copy of Adversary proceeding.). The Adversary remains pending at this time, with a status hearing scheduled for November 10, 2026 at 2:00 pm.

6. All litigation remains pending at this time. No judgment has been rendered. No determination or ruling has been made thereon. Ergo, the Debtor hereby objects to the Claim on the grounds that the total amount of $5,000,000.00 is unliquidated, an alleged amount, which the Court has yet to rule on, and which the Adversary proceeding has not yet been adjudicated.

7. Thus, the Claim is disputed, has not yet been adjudicated, and is unliquidated. Accordingly, it is respectfully requested that Respondent's Claim not be paid by this Court pending resolution of the litigation. After resolution of litigation, if it is found that Respondent is entitled to any funds, Respondent may amend their Claim accordingly.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration is executed October 19, 2026, at Woodland Hills, California.

Kevin T. Simon

# EXHIBIT "A"

**Fill in this information to identify the case:**

Debtor 1 Faissel Vincent Farhi

Debtor 2 (Spouse, if filing) ______

United States Bankruptcy Court for the: Central District of California

Case number 2:26-bk-12374-WB

Official Form 410

# Proof of Claim

**04/25**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Everly Fitzgerald
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? ______

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Kurt Ramlo, Ramlo Law | Name: Joshua D. Schein, Schein Law Group |
| Number Street: 15021 Ventura Blvd. #544 | Number Street: 9401 Wilshire Blvd., Suite 750 |
| City: Sherman Oaks State: CA ZIP Code: 91403 | City: Beverly Hills State: CA ZIP Code: 90210 |
| Contact phone: (310) 880-9208 | Contact phone: (424) 355-8555 |
| Contact email: RamloLegal@gmail.com | Contact email: Josh@Schein.Law |

   Uniform claim identifier (if you use one):

   __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? ______

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ unliquidated but no less than $5,000,000 .

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

See attached complaint.

9. **Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ______________________________

**Basis for perfection:** ______________________________
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $__________________
**Amount of the claim that is secured:** $__________________
**Amount of the claim that is unsecured:** $__________________(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $____________________

**Annual Interest Rate** (when case was filed)_______%
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________________

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: ______________________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $__________ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $__________ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $__________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $__________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $__________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $__________ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 05/21/2026
MM / DD / YYYY

Signature: [signature]

**Print the name of the person who is completing and signing this claim:**

Name: Everly Fitzgerald
First name | Middle name | Last name

Title: Plaintiff

Company: ______________________
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 9401 Wilshire Blvd., Suite 750
Number Street

Beverly Hills, CA 90210
City | State | ZIP Code

Contact phone: (424) 355-8555

Email: Josh@Schein.Law

Case 2:26-bk-12374-WB Doc 5 Filed 01/19/26 Entered 01/19/26 17:00:58 Page 4 of 48

SCHEIN
LAW GROUP

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/22/2023 4:17 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

Joshua D. Schein (State Bar No. 264055)
Josh@ScheinLawGroup.com
Helen You (State Bar No. 329057)
Helen@ScheinLawGroup.com
2029 Century Park East, Suite 400
Los Angeles, California 90069
Telephone: (424) 355-8555
Facsimile: (424) 355-8087
Attorneys for Plaintiff
Everly Fitzgerald

**SHERMAN LAW CORPORATION**
Lisa G. Sherman (State Bar No. 176548)
Lisa@Sherm-Law.com
6300 Wilshire Blvd, Suite 880
Los Angeles, California 90048
Telephone: (323) 488-2087
Attorneys for Plaintiff
Everly Fitzgerald

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

EVERLY FITZGERALD an individual,

Plaintiff,

vs.

ZELLIJ GALLERY INC. a California Corporation; FAISSEL FARHI, an individual, and DOES 1-10

Defendants.

**COMPLAINT FOR:**

23STCV31387

1. **Sexual Harassment**
2. **Sex/Gender Discrimination**
3. **Retaliation under FEHA**
4. **Disability Discrimination**
5. **Failure to Accommodate/Engage in the Interactive Process**
6. **Failure to Prevent Harassment, Discrimination, and Retaliation**
7. **Wrongful Termination**
8. **Intentional Infliction of Emotional Distress**
9. **Violation of Labor Code §1102.5**
10. **Violation of Labor Code §6310**
11. **Violation of Labor Code §98.6**
12. **Failure to Pay All Compensation Owed and Late Pay**
13. **Overtime**
14. **Failure to Pay Minimum Wage**
15. **Failure to Provide Meal Periods**
16. **Failure to Provide Rest Periods**
17. **Failure to Reimburse Business Expenses**

SCHEIN LAW GROUP

18. **Failure to Provide and Maintain Compliant Wage Statements**
19. **Failure to Pay All Compensation Due at Discharge**
20. **Unfair Business Practices**

**REQUEST FOR JURY TRIAL**

SCHEIN LAW GROUP

Case 2:25-cv-12374-WB Doc 5 Filed 10/19/26 Entered 10/19/26 17:00:58 Page 1 of 48

NOW COMES, Plaintiff EVERLY FITZGERALD ("Ms. Fitzgerald" or "Plaintiff") who alleges causes of action against Defendants ZELLIJ GALLERY INC. ("Zellij Gallery") a California Corporation, FAISSEL FARHI, ("Mr. Farhi") an Individual, and DOES 1-10 (collectively, the "Defendants") as follows:

## INTRODUCTION

1. This action arises out of Defendants' torment and harassment of, and discriminatory conduct directed at Everly Fitzgerald. Ms. Fitzgerald was a dedicated and exemplary Executive Assistant to Mr. Farhi, the owner of the Zellij Gallery. However, after Ms. Fitzgerald complained of an ongoing hostile work environment and illegal business practices, she was wrongfully terminated by Mr. Farhi in a fit of rage.

2. Ms. Fitzgerald, relying on Mr. Farhi's false promises of maintaining a safe and productive work environment, accepted employment with Zellij Gallery to further her career. However, from the outset of her employment, Mr. Farhi subjected Ms. Fitzgerald to a litany of unsafe and illegal business practices, including, but not limited to, unwelcome and offensive sexual overtures, blatant discrimination, and numerous wage hour violations.

3. Ms. Fitzgerald repeatedly and vehemently opposed Mr. Farhi's unsafe and illegal business conduct and made multiple complaints. In response, Mr. Farhi cruelly and relentlessly retaliated against Ms. Fitzgerald with the intent of forcing Ms. Fitzgerald to quit her job. Mr. Farhi's retaliatory acts included, but were not limited to, interference with Ms. Fitzgerald's ability to work, reassignment of job duties, micromanagement, and baseless disciplinary action.

4. Shortly after Ms. Fitzgerald complained of Mr. Farhi's retaliation, on August 10, 2023, Defendants terminated Ms. Fitzgerald. When Ms. Fitzgerald asked why she was being terminated, Mr. Farhi refused to provide a reason for her termination. When Ms. Fitzgerald attempted to send an email to Mr. Farhi an email requesting an explanation for her termination, Mr. Farhi screamed at her and ripped the computer's power cord off the wall. Mr. Farhi even called the West Hollywood Sheriff's Department to escort Ms. Fitzgerald from the building, and they witnessed the entire interaction.

SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 85 Filed 01/19/26 Entered 01/19/26 17:00:58 Desc

5. Two days later, on or about August 12, 2023, Ms. Fitzgerald was admitted to a Hospital Emergency Room to undergo immediate surgery for a life-threatening condition. Upon information and belief, Ms. Fitzgerald's condition is directly attributable to, and was exacerbated by, the emotional distress she suffered from Defendants' unlawful conduct.

6. Defendants' malicious harassment, discrimination and retaliatory conduct has caused Ms. Fitzgerald to lose wages and suffer other economic harm, subject to proof at trial. As a result of Defendants' conduct, Plaintiff also has suffered severe and ongoing emotional distress and physical injuries, subject to proof at trial.

**THE PARTIES**

7. At all times relevant, Ms. Fitzgerald was and is an adult residing in the County of Los Angeles in the State of California.

8. At all times relevant, Defendant Zellij Gallery was and is a California corporation doing business in the State of California. Defendant Zellij Gallery works with architects and design firms to provide high-end Moroccan tiles.

9. At all times relevant, Defendant Mr. Farhi was and is an adult resident of the State of California. At all relevant times, Mr. Farhi was and is the owner of Zellij Gallery. Mr. Farhi exercised and continues to exercise substantial and exclusive authority in corporate decision making, ultimately dictating all of Zellij Gallery's policies and practices. Mr. Farhi also qualifies as a "person acting on behalf of an employer" under Labor Code § 558.1 and is liable for the unpaid wages and penalties alleged in this Complaint.

10. Defendants misclassified Plaintiff as a salaried exempt employee, earning approximately $45,000 per annum. In her employment as an Executive Assistant, Ms. Fitzgerald did not spend more than 50% of her workday exercising independent judgment or discretion. Ms. Fitzgerald's job duties were always subject to the direction and discretion of Mr. Farhi. Due to the character of her job duties and wages she received, the law required Defendants to classify Ms. Fitzgerald as a non-exempt employee.

11. The true names and capacities, whether individual, plural, corporate, partnership,

SCHEIN LAW GROUP

associate or otherwise, of DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE was, and is, negligently, recklessly, and/or intentionally responsible for the events and happenings hereinafter referred to, and thereby negligently, recklessly, and/or intentionally legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the fictitiously sued Defendants' true names and capacities, after the same have been ascertained.

12. At all relevant times, each of the Defendants ratified each and every act or omission complained of herein. At all relevant times, each of the Defendants aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

13. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

**ALTER EGO ALLEGATIONS**

14. Plaintiff is informed and believes and thereon alleges that some of the defendants, and entities named as Defendants herein, including but not limited to Zellij Gallery, Mr. Farhi, and DOES 1-10, and each of them, were at all times relevant the alter ego corporations of one another.

15. All Defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, harassment, and failure to pay wages and benefits alleged in this Complaint, which conduct is prohibited under California Government Code section 12940, et seq. and the California Labor Code. All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's



SCHEIN LAW GROUP

damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

**JOINT EMPLOYER ALLEGATIONS**

16. Under California law, Defendants Zellij Gallery, and Mr. Farhi, are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff. Defendants Zellij Gallery and Mr. Farhi, had the power to hire and fire Plaintiff, supervise and control her work schedule and/or terms and conditions of employment, determined her rate of pay, and maintained her employment records.

17. Defendants Zellij Gallery and Mr. Farhi and Does 1-10 suffered or permitted Plaintiff to work and/or "engaged" Plaintiff so as to create a common law employment relationship. As joint employers of Plaintiff, Defendants Zellij Gallery, Mr. Farhi and Does 1-10 are jointly and severally liable for the civil penalties and all other relief available to Plaintiff under the law. Plaintiff is informed and believes and thereon alleges that at all relevant times, Defendants Zellij Gallery, Mr. Farhi and Does 1-10, and each of them, have acted as joint employers with respect to Plaintiff because Defendants Zellij Gallery, Mr. Farhi, and Does 1-10 have:

(a) jointly exercised meaningful control over the work performed by the Plaintiff;

(b) jointly exercised meaningful control over Plaintiff's wages, hours, and



SCHEIN LAW GROUP

working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff;

(c) jointly required that Plaintiff perform work which is an integral part of Defendants' businesses; and

(d) jointly exercised control over Plaintiff as a matter of economic reality in that Plaintiff was dependent on Defendants, who shared the power to set the wages of Plaintiff and determine her working conditions, and who jointly reaped the benefits from the underpayment of her wages and noncompliance with other statutory provisions governing her employment.

**JURISDICTION**

18. This Court has personal jurisdiction over Plaintiff, because of her residence in the County of Los Angeles, State of California.

19. Pursuant to Code of Civil Procedure section 410.10, this action lies within the general jurisdiction of this Court, because the causes of action arise under California law and Defendants reside and/or do business within California.

20. The unlawful acts committed by Defendants, as described in this Complaint, occurred within the State of California.

21. This Court has personal jurisdiction over Defendant Zellij Gallery, because it conducts substantial business in the County of Los Angeles, State of California.

22. This Court has personal jurisdiction over Defendant Mr. Farhi, because of his residence in the State of California.

**GENERAL ALLEGATIONS**

23. On or about December 9, 2020, Plaintiff, who identifies as female and a woman, was hired by Mr. Farhi, as his Executive Assistant. Upon information and belief, Mr. Farhi is the owner, Director, President, CEO, CFO, and Secretary of Zellij Gallery.

24. Plaintiff began her employment on or about January 4, 2021, at Zellij Gallery's

SCHEIN LAW GROUP

showroom located in West Hollywood, California. Of the approximately five or more employees who worked for Zellij Gallery during the relevant time period, only Plaintiff and Mr. Farhi worked in the showroom. Plaintiff's job duties included, without limitation, greeting clients, educating clients about the products, answering calls and responding to emails, creating trade accounts, checking out mosaic tile samples, shipping color samples, generating and editing sales estimates, converting estimates into invoices, creating and transmitting payment links to customers, verifying received payments, adding invoices to order trackers, sending payment reminders, submitting paid invoices to warehouse and manufacturing, and updating inventory reports. The majority of Plaintiff's tasks required her to use Zellij Gallery's Quickbooks accounts. Plaintiff did not spend more than 50% of her workday exercising independent judgment or discretion in completing these tasks.

**A. <u>Defendants Intentionally Misclassified Ms. Fitzgerald</u>**

25. Defendants classified Plaintiff as an exempt, salaried employee. As such, Defendants did not pay Plaintiff overtime wages for hours worked in excess of eight (8) hours a day or forty (40) hours per week. Nor did Defendants permit Plaintiff to take ten (10) minute rest breaks for every four hours worked, or an uninterrupted thirty (30) minute meal break during shifts lasting longer than five (5) hours. However, based on the nature of her job duties and initial annual salary of $45,000.00 per year, Plaintiff should have been classified as a non-exempt hourly employee. Plaintiff was therefore entitled to overtime wages and meal and rest breaks, as required by California law.

26. Moreover, Defendants failed to reimburse Plaintiff for business expenses accrued from having to use her personal vehicle and cell phone to perform her job duties.

27. In addition, despite being put on notice by three different payroll companies that wages were not being timely paid, Defendants were habitually late in issuing Plaintiff her wages – which did not include overtime wages, meal and rest break premiums, reimbursement for business expenses, and penalties for late payment as required by law. For the vast majority of her employment, Defendants did not pay Plaintiff bi-weekly and instead issued her monthly checks. Defendants also delayed payment of earned commission for months on end – if they paid her


SCHEIN LAW GROUP

commission at all.

28. In addition to the foregoing violations of law, Defendant denied Plaintiff her sick pay to which she was legally entitled, from on or about December 31, 2021, through January 7, 2022, when she contracted COVID-19. Instead, Defendants required her to forfeit her accrued vacation days, thus having her use her vacation time and refusing to pay her sick leave as required by law.

**B. <u>Defendants Created a Hostile and Discriminatory Environment</u>**

29. At all times, Plaintiff was an exemplary employee as evidenced by the fact that during her approximately three years of employment, she was given three raises and a bonus. Plaintiff was not subject to any discipline and was never criticized for her performance – until she formally complained of Defendants' unlawful conduct on or about July 28, 2023. Plaintiff's complaint stemmed from Mr. Farhi's inappropriate conduct and illegal harassment.

30. From the beginning of Ms. Fitzgerald's employment, Defendant Mr. Farhi created a sexually hostile work environment for Plaintiff by leering at her and making unwelcome and inappropriate sexual comments. Mr. Farhi's conduct included, but was not limited to:

- Mr. Farhi repeatedly looked at Plaintiff's body from head to toe, focusing on her breasts and buttocks. On numerous occasions, when Plaintiff was required to reach upward to put away tile samples, she witnessed Mr. Farhi staring at her buttocks. On other occasions, while working at her desk, Mr. Farhi would approach Plaintiff from behind and lean over her to stare at her breasts.
- Mr. Farhi also made inappropriate and suggestive comments about Ms. Fitzgerald's physical appearance to the effect of, "have you been working out… you look incredible… what have you been doing?"
- Mr. Farhi also made inappropriate and sexualized comments to Ms. Fitzgerald about the infidelity and marital conflict between Zellij Gallery partners and clients. Mr. Farhi even spent close to two hours holding Plaintiff as a captive audience and telling her about his views on cheating and open relationships. Mr. Farhi stated that men can have as many women as they want sexually, but that it was disgusting for women to have

SCHEIN LAW GROUP

multiple partners.

- Mr. Farhi called women who cheated "cunts" and often referred to a client's wife as a "cunt." Mr. Farhi blamed the client's wife for allowing her husband's affair to interfere with his business.
- Mr. Farhi even asked Plaintiff for her opinion about open sexual relationships, in a transparent and shameless attempt to gage her openness to having an open sexual relationship with him.
- Mr. Farhi also informed Ms. Fitzgerald of his sexual preferences and opinions about intimate relationships, all of which were offensive to and unwelcome by Plaintiff. Mr. Farhi stated that all men cheat, and that it is in fact their prerogative to do so, and he therefore does not believe in monogamy. Mr. Farhi stated that all women should essentially "get with the program" and accept his unilateral polygamous beliefs.
- Mr. Farhi told Ms. Fitzgerald that he financially "takes care" of all of the women with whom he had ongoing sexual relations. On numerous occasions, Mr. Farhi insinuated that if Ms. Fitzgerald agreed to sleep with him, he would also "take care" of her financially.
- After learning that Ms. Fitzgerald had gone through a breakup in or around June 2022, Mr. Farhi repeatedly stated to Ms. Fitzgerald that he was "here for [Ms. Fitzgerald]….would like to care of [Ms. Fitzgerald]… would pay [P Ms. Fitzgerald's] bills," or words to that effect. For example, on a Friday at approximately 4:00 p.m. or 4:40 p.m., Mr. Farhi attempted to convince Ms. Fitzgerald to have drinks and dinner with him after work. Ms. Fitzgerald politely declined. However, Mr. Farhi continued to ask her out, peppering his requests with his desire to financially "take care" of her.
- Mr. Farhi also shared inappropriate comments about other women he had encountered with Ms. Fitzgerald. For example, on one occasion, Mr. Farhi told Ms. Fitzgerald that he had joined a yoga class for the primary purpose of watching women in the "child's pose."
- Mr. Farhi additionally disclosed each of the female clients with whom he had engaged

SCHEIN LAW GROUP

in sexual relations, even calling one of the female clients a "hoe," or words to that effect.

- When attractive female clients came into the showroom, Mr. Farhi would personally attend to them while leering at their breasts, cleavage, and buttocks.

When Ms. Fitzgerald opposed Mr. Farhi's harassing conduct, he refused to cease his behavior.

31. In addition, Mr. Farhi showed himself to be a brazen misogynist and deeply sexist by singling out Ms. Fitzgerald – his only female employee – by treating her less favorably than the other male employees. For example, Mr. Farhi consistently made blatantly derogatory and humiliating jokes about Ms. Fitzgerald's sex and/or gender. Additionally, on no less than twenty-five occasions, Mr. Farhi suggested that Plaintiff was "hormonal" and must be "having her period", when addressing any of Ms. Fitzgerald's behavior that he found disagreeable. Mr. Farhi specifically made statements to the effect of: "You must be on the rag today," "You're obviously PMS'ing," "You're so hormonal," and "Is it that time of the month?" In contrast, although Mr. Farhi openly expressed frustration with the performance and attendance of a male a warehouse employee, Mr. Farhi minimized his mistakes and required Ms. Fitzgerald to fix his errors for him.

32. Moreover, Mr. Farhi assigned Plaintiff extremely menial tasks, while referring to her as "you women."

C. **Defendants Violated Wage and Hour Laws**

33. On or about June 2, 2022, after Ms. Fitzgerald had been asking for the past six months for a copy of or access to her paystubs, Mr. Farhi refused and sent her an email with a list of check dates and dollar amounts for the period of August 27, 2021, through June 1, 2022. Ms. Fitzgerald was not provided with any record of pay from January 4, 2021, through August 26, 2021. Despite Ms. Fitzgerald's complaints, Mr. Farhi refused to provide her pay records as required under California law.

34. From in or about June 21, 2022, through July 1, 2022, Ms. Fitzgerald contracted COVID and had to miss a big work event she had been assigned to coordinate, set up, and attend. Even though Ms. Fitzgerald was sick, entitled to not work and use her earned sick days, Mr. Farhi delivered two large boxes of work to Ms. Fitzgerald' home, along with her work computer, to require her to work remotely while she was sick. Additionally, even though he knew that Ms.



SCHEIN LAW GROUP

Fitzgerald was sick, and he knew that he had required her to perform work while sick, Mr. Farhi deducted Ms. Fitzgerald's earned vacation days for this time period.

35. Starting on or about August 28, 2022, Mr. Farhi started misdating commission checks labeling the commission checks for the same month as Ms. Fitzgerald's monthly salary wages, when in fact the commissions were earned and due months earlier. Despite Ms. Fitzgerald's complaints, Mr. Farhi refused to correct the misrepresentations and intentionally incorrect pay dates.

36. Before the Labor Day holiday in 2022, Ms. Fitzgerald received (as she had previously) an email reminder from Defendants' payroll provider, Paychex, for Mr. Farhi to submit payroll in order for the employees to be paid on time. Ms. Fitzgerald asked Mr. Farhi to process payroll on time and take the notification seriously because she, and his other employees, needed their wages paid on time. Mr. Farhi responded to Ms. Fitzgerald with words to the effect, "No problem, it's being taken care of." Ms. Fitzgerald then contacted the bank on or about September 4, 2022, before the bank closed for Labor Day, and was informed that no more automatic deposits would come through before the holiday. Ms. Fitzgerald then had to contact Mr. Farhi the same day and beg him to process a manual deposit so that her rent check would not bounce, which was extremely stressful for Ms. Fitzgerald. Still, Ms. Fitzgerald's actual paycheck was not issued until September 7, 2022.

37. Starting in late September 2022, Mr. Farhi processed client checks that had been received months prior, and which he claimed that he had lost. As a result, Mr. Farhi significantly delayed the payment of Ms. Fitzgerald's commissions – if he paid them at all.

**D. <u>Mr. Farhi Instructed Ms. Fitzgerald to Engage in Unlawful Business Practices</u>**

38. On October 7, 2022, Mr. Farhi instructed Ms. Fitzgerald to locate the credit card of a female client, who he referred to as a "cunt." He told Ms. Fitzgerald to charge her credit card for unreturned boards, despite the client expressly informing the business that she would be returning the boards and asking them not to charge her credit card. Mr. Farhi dismissed Ms. Fitzgerald's repeated opposition to what she believed was an unlawful business practice and theft.

SCHEIN LAW GROUP

**E. Ms. Farhi Threatened Ms. Fitzgerald's Job if she Reported for Jury Duty**

39. On or about December 2, 2022, Ms. Fitzgerald was supposed to report for jury duty, but Mr. Farhi told her that she needed to find a way to get out of it because he had a trip planned to Morocco. Mr. Farhi intimidated Ms. Fitzgerald into trying to be excused from jury duty in order to keep the showroom open while he was out of the country stating, words to the effect, that "If I cannot count on you while I am away, there is no need to employ you any longer." As such, Mr. Farhi threatened Ms. Fitzgerald's job and told her to work instead of attending jury duty.

**F. Ms. Fitzgerald Complained About Defendants' Tax Evasion**

40. In addition to his other illegal conduct, Ms. Fitzgerald witnessed and complained about Mr. Farhi keeping separate sets of books to evade taxes for Zellij Gallery. Beginning in or about March 1, 2023, Mr. Farhi began keeping two sets of accounting books in Quickbooks. Mr. Farhi directed Ms. Fitzgerald to run all orders shipped to addresses outside of Los Angeles through one set of books in the system, so that they were not charged sales tax. Prior to this, only tax-exempt clients and goods shipped out of California were not taxed. When Ms. Fitzgerald questioned this new set of books which she believed to be unlawful, Mr. Farhi became irate and instructed her to "just do it." Upon information and belief, the second set of books caused items which should have been taxed not to be treated as tax exempt.

41. In addition, Mr. Farhi held over client payments from January 2022 to process in March 2022 in the new system, causing commissions previously earned by Ms. Fitzgerald and due to her, to be delayed. Despite Ms. Fitzgerald's continued pleas to be paid on time, Mr. Farhi dismissed her requests and ignored her demands for Mr. Farhi to follow California labor laws.

**G. Ms. Fitzgerald Suffered Disability Discrimination**

42. From on or about June 18, 2023, through on or about June 23, 2023, Mr. Farhi had the showroom re-painted. When Ms. Fitzgerald returned to work in the showroom, which had poor ventilation and air flow, she informed Mr. Farhi that she was experiencing severe migraines from the paint fumes. Mr. Farhi told Ms. Fitzgerald to keep working and "just open the doors." Instead of accommodating her migraines and allowing Ms. Fitzgerald to work from home, Mr. Farhi suggested that she work for another employer. Indeed, a building neighbor, came by the showroom

SCHEIN LAW GROUP

mid-week and commented how strong the fumes were and how surprised she was that Ms. Fitzgerald continued to work in the showroom.

**H. Defendants Refused to Comply with Health and Safety Laws**

43. From in or about June 20, 2023, through July 29, 2023, due to the fresh paint, the bathroom door did not close all the way, so that it could not be locked and swung wide open unexpectedly. When Ms. Fitzgerald reported to Mr. Farhi of this, he promised to fix it right away. Mr. Farhi did not do as he promised. As such, during this approximately one-month period, when Ms. Fitzgerald used the restroom, she had to awkwardly use one foot to hold the door closed. One time the door swung wide open while Mr. Farhi was with a client in the showroom which was directly across from the restroom, humiliating Ms. Fitzgerald. Despite Ms. Fitzgerald's repeated reminders to fix the bathroom door, Mr. Farhi did not fix it until Ms. Fitzgerald formally complained to him that the labor laws required that restroom stalls have locks that worked.

44. From on or about July 17, 2023, through on or about July 21, 2023, the air conditioning in the showroom was not working which caused the temperature to be over 80 degrees. Mr. Farhi 's response was, to the effect, "I have worked here for 15 years in several conditions. The entire planet is hot and 82 degrees is not unbearable. I have so much on my plate and this is the last thing I want to deal with now…." Ms. Fitzgerald sent Mr. Farhi a screenshot from a Google search stating in California's indoor workplaces, employers are required to maintain a temperature between 68 and 78 degrees Fahrenheit, depending on the type of work being performed. When Ms. Fitzgerald called to inform Mr. Farhi that she was again experiencing a severe migraine because of the heat, Mr. Farhi again told her that, "If I cannot rely on you when I am away to keep the showroom open, then there is no need for you," or words to that effect. When Mr. Farhi returned to the office on July 21, 2023, and saw the air conditioner repair company replacing the air conditioning unit, Mr. Farhi became verbally abusive towards Ms. Fitzgerald stating he would never authorize the air conditioner to be fixed on a business day. Ms. Fitzgerald reminded Mr. Farhi that he scheduled the repair and texted her the day before to inform her that he would be coming. In response, Mr. Farhi sent Ms. Fitzgerald home for the day in a fit of rage.



SCHEIN LAW GROUP

**I. Defendants Refused to Pay for Business Expenses**

45. On or about July 27, 2023, at approximately 5:16 pm, Ms. Fitzgerald texted Mr. Farhi to inform him that she received a $58 parking ticket outside the showroom where she was instructed to park by Mr. Farhi upon her hire. Initially, Ms. Fitzgerald moved her car every two hours to avoid receiving a ticket which meant closing the showroom for 5-10 minutes while she moved her car, which were the only "breaks" she took during the workday. However, Mr. Farhi became angry at Ms. Fitzgerald for taking these "breaks" which required her to close the showroom to move her car. Then, Mr. Farhi ordered Ms. Fitzgerald to continue parking in the two-hour spot without moving her car, asserting that the two-hour limit was not enforced. Because Mr. Farhi refused to allow Ms. Fitzgerald to move her car, she understood that Defendants would pay for any parking ticket she might receive. However, when Ms. Fitzgerald informed Mr. Farhi that she had received a ticket, Mr. Farhi responded to her by text, denying that he told her to park in the two-hour parking area and informing her that he was not responsible for paying for Ms. Fitzgerald's parking tickets.

**J. Ms. Fitzgerald Complains of Unlawful Conduct, and Defendants Retaliate**

46. The next day, on or about July 28, 2023, Ms. Fitzgerald had enough of Mr. Farhi's gaslighting and unlawful conduct. Ms. Fitzgerald texted Mr. Farhi to complain that she rarely went to lunch, never took a rest break, and that Mr. Farhi had expressly instructed her not to close the showroom even for a few minutes to move her car every two hours. Mr. Farhi texted back,

**This is bullshit, I am coming now and we are going to talk about this.**

In their face-to-face meeting, Ms. Fitzgerald stated to Mr. Farhi that she was no longer going to tolerate his unlawful conduct, including his unwelcome sexual advances, his sexist comments, continued late and incomplete pay, denial of meal and rest breaks, refusal to allow her to use her incremental PTO, failure to correct unsafe work conditions, and violation of her privacy in the restroom by refusing to fix the lock. Ms. Fitzgerald also stated that she would no longer engage in his illegal business practices with clients.

47. Immediately after Ms. Fitzgerald formally opposed Defendants' unlawful practices, Mr. Farhi engaged in a two-week tirade of relentless retaliation towards Ms. Fitzgerald.

SCHEIN LAW GROUP

- Within twenty minutes of Ms. Fitzgerald's face-to-face meeting with Mr. Farhi, he terminated her access to Quickbooks – which is required for her to do the vast majority of her duties – without notifying Ms. Fitzgerald. Ms. Fitzgerald immediately emailed Mr. Farhi that same day stating that he was retaliating against her for her complaints and asking why he terminated her access to Quickbooks, which stripped her of the majority of her duties, to which Mr. Farhi responded hours later that he removed her Quickbooks duties due to an error she made, despite Ms. Fitzgerald's proof that she did not make any error. Because Ms. Fitzgerald no longer had access to Quickbooks, Ms. Fitzgerald was required to email Mr. Farhi requesting that he provide her with the data needed from Quickbooks to complete the tasks.
- Mr. Farhi instructed Ms. Fitzgerald to email him a detailed spreadsheet daily of all her activities, which she was never previously required to do, so that he could "monitor" her.
- Mr. Farhi also gave Ms. Fitzgerald work assignments designed to overload her and to get her to quit. Prior to their face-to-face meeting, there were weeks Ms. Fitzgerald did not see or speak to Mr. Farhi because he was entirely hands off on whatever she was working on. It was common for Ms. Fitzgerald to receive 60+ emails per day. After their meeting, Mr. Farhi required Ms. Fitzgerald to type a summary of each and every email and phone call made or received and detail it in a daily activities spreadsheet.
- Mr. Farhi also suddenly changed policies and accused Ms. Fitzgerald of violating them. For example, on the same day as their face-to-face meeting on July 28, 2023, Mr. Farhi immediately changed the shipping policy and claimed that Ms. Fitzgerald made a $400 error, despite the fact that the shipping arrangements were consistent with longstanding policy and approved by the client months earlier.

48. In addition, Mr. Farhi assigned Ms. Fitzgerald new nonsensical, menial "tasks" which were intended to make her quit. Ms. Fitzgerald arrived early and stayed late to keep up with the new and additional rote tasks he made her do. The new "tasks" included:

- Mr. Farhi instructed Ms. Fitzgerald to design a new window display with an assigned due

SCHEIN LAW GROUP

date. This was the first time Ms. Fitzgerald was ever given a due date.

- Mr. Farhi directed Ms. Fitzgerald to make sure that the slideshow of Zellij Gallery's products was displayed at all times. Prior to July 28, 2023, the slideshow played at all times with no issues, except for during occasional power outages. On the morning of July 31, 2023, Mr. Farhi arrived at the showroom prior to Ms. Fitzgerald. When Ms. Fitzgerald arrived, the slideshow was off. Mr. Farhi reiterated his directive to Ms. Fitzgerald in a stern voice that it was her responsibility that the slideshow be on at ALL times. Ms. Fitzgerald immediately turned on the slideshow in front of him. Later that day, when Ms. Fitzgerald returned from the restroom, Mr. Farhi informed her that the slideshow was off again. Per his request, she again turned on the slideshow. When the slideshow went off for a third time, Mr. Farhi erupted in anger. Ms. Fitzgerald told him that she did not touch it and suggested the possibility it was on a timer set to turn the TV off. When Ms. Fitzgerald asked if he had the TV manual and was familiar with the timer settings, Mr. Farhi was dismissive of her. The TV that displayed the slideshow was located directly behind Ms. Fitzgerald's desk, making it unnoticeable to her, unless she stopped working and turned around. Ms. Fitzgerald came up with the solution that she would set a timer on her phone to check the slideshow four times per day at a specific time. Ms. Fitzgerald e-mailed Mr. Farhi to let him know the plan, and the slideshow mysteriously never turned off again. Upon information and belief, Mr. Farhi was intentionally turning off the slide show in a childish effort to harass Ms. Fitzgerald and to manufacture reasons to criticize her.
- The showroom had three lights switches: One was on a timer, one Ms. Fitzgerald turned on and off each day, and the third was not used. On or about August 7, 2023, Mr. Farhi told Ms. Fitzgerald he had replaced the bulbs on the third fixture and that she must make sure to turn them on when she arrives and then turn them off when she leaves. Ms. Fitzgerald set a timer on her phone to remind her because Mr. Farhi emphasized the importance of this directive. The following morning, August 8, 2023, Ms. Fitzgerald went to turn the lights on the third fixture and the lights did not go on. Ms. Fitzgerald recorded a video of her attempting to turn the lights and showing that they would not go on and immediately





SCHEIN LAW GROUP

emailed it to Mr. Farhi to show him that she tried to follow through with his instruction, but the lights were not working. Mr. Farhi never responded.

49. Mr. Farhi also made it more difficult for Ms. Fitzgerald to perform her job duties. For example, on July 31, 2023, Ms. Fitzgerald's Bluetooth apple mouse alerted her to a low battery alert, so she made sure to plug it in to charge overnight. When Ms. Fitzgerald left the showroom on July 31, 2023, Mr. Farhi was still there (and the only person there). The next morning, when Ms. Fitzgerald arrived at work, the mouse was unplugged, which had never happened before. Without a working mouse, Ms. Fitzgerald could not perform most of her daily duties. On information and belief, Mr. Farhi unplugged the charging cord as part of his attempt to either make Ms. Fitzgerald quit or to terminate her if she did not complete her tasks.

50. Mr. Farhi also suddenly started blaming Ms. Fitzgerald for errors that could not have been attributable to her. For example, on or about August 1, 2023, Ms. Fitzgerald emailed Mr. Farhi stating, "You revoked my access to quickbooks on Friday 7/28/23 and you're blaming me for something that happened in quickbooks on Monday 7/31/23. … how could I have moved a packing slip on 7/31/23 when I didn't have access to quickbooks on 7/31/23 to download the packing slip?" Mr. Farhi again did not respond.

51. Because Ms. Fitzgerald could not complete her tasks without information from Quickbooks, Ms. Fitzgerald was required to repeatedly email Mr. Farhi to obtain Quickbooks information to complete do her job, to which Mr. Farhi did not immediately respond, delaying completion. For example, Ms. Fitzgerald emailed Mr. Farhi, on August 1, 2023, "per our conversation at 2:12 pm today, I'm reminding you to please email me the contact name and number re invoice 183416. I don't have access to quickbooks to look it up myself and I would like to complete your request in a timely manner." Mr. Farhi did not respond. Exasperated at the end of the day, Ms. Fitzgerald wrote: "I've made the updates requested such as providing more detailed information re: each client interaction [in the daily activities report]. After much thought I have decided I don't feel comfortable omitting the tasks I perform for you from my activities report as you asked. I feel that because you explained the reason for the report was to monitor my activities and most of my time is taken up responding to your emails it is only right to include them."

SCHEIN LAW GROUP

52. On or about August 2, 2023, Ms. Fitzgerald noticed in the Paychex payroll system a change of payroll dates from monthly pay to semi-monthly and changing her classification from salary to hourly. The next day, Ms. Fitzgerald asked Mr. Farhi if she could take her lunch at 2:00 p.m. instead of 1:00 p.m., as he recently directed her to do after July 28, 2023. Mr. Farhi responded that she is a salaried employee and can take her breaks anytime she wanted, thus contradicting the Paychex change in her pay classification.

**K. Ms. Fitzgerald Complains to Human Resources, and is Immediately Fired**

53. On or about August 9, 2023, Ms. Fitzgerald received an email at 9:00 a.m. from Monika Gransee, who stated that she was the new Human Resources consultant for Zellij Gallery and "will be working with Mr. Farhi to ensure that our team experiences a smooth transition as we implement some important changes." The email indicated a "positive" change in the payroll schedule to bi-weekly pay and attached a new Employee Handbook "to ensure a harmonious and productive work environment," posters and notices, which gave notice of policies which were, in fact, the opposite of Defendants' actual practices. Upon information and belief, the required notices were not posted at any time during Ms. Fitzgerald's employment.

54. The Employee Handbook included an Equal Employment Opportunity ("EEO") and anti-discrimination and harassment policies that promised to investigate any reported complaints, no retaliation for reporting complaints, and remedial action would be taken against violators. While the meal and rest break policies detailed California law (none of which Defendants had been following through the course of Ms. Fitzgerald's employment) the new policy emphasized prioritizing clients over breaks. The Handbook also included policies on PTO, use of sick pay, and parking that were inconsistent with Defendants' practices.

55. Ms. Fitzgerald was hopeful that the HR consultant had been hired in response to her repeated complaints of workplace harassment and illegal labor practices. Later that same day, Ms. Fitzgerald emailed Ms. Gransee:

> I have to ask if you were hired to address the complaints I've had to make to Mr. Farhi? Please let me know. I don't know if you're aware, but **I've been complaining about a lot of issues with not being paid my wages and having to**





SCHEIN LAW GROUP

**deal with a harassing and unsafe work env for a long time**. This came to a head on 7/28/23 when I insisted that Mr. Farhi stop his unlawful treatment of me. Ever since then, it has only gotten worse. I've had my duties taken away and I've been assigned to new lower level tasks. I feel like I'm being pushed out and I need it to stop. (Emphasis added).

56. Ms. Gransee replied later that evening, "I was not aware of any allegations against Mr. Farhi. I was hired as a consultant to assist with implementation of bus policies and HR policies and I am acting in this capacity."

57. The very next day on or about August 10, 2023, at approximately 10:00 a.m. – less than half-day after Ms. Fitzgerald last raised her unlawful complaints against Mr. Farhi – Mr. Farhi entered the showroom with a fully-armed West Hollywood Sheriff and stated, "Everly you are terminated, effective immediately. The Sheriff is here to escort you out. You will receive your final check today via direct deposit. Here's a box, collect your things," or words to that effect. Ms. Fitzgerald responded, to the effect, "Ok. Can you tell me why I am being terminated?" Mr. Farhi said something along the lines of, "Not right now." Ms. Fitzgerald asked if she could email him a recap of their encounter, stating he terminated her today and declined to explain why. Mr. Farhi, acquiesced. However, as soon as Ms. Fitzgerald sat down at the computer to do so, Mr. Farhi became hostile, and aggressive, and ordered Ms. Fitzgerald not to use the computer. He then stormed up to Ms. Fitzgerald and physically ripped the power cord out of the wall and/or computer. The exchange was recorded on Sheriff Essandoh's body camera.

58. Ms. Fitzgerald was then escorted out of the building in front of business colleagues who work at neighboring offices. The entire experience was intended to be, and was, humiliating and insulting. After Ms. Fitzgerald was walked outside from the back of the building to the front of the building, at least three separate colleagues approached Ms. Fitzgerald to ask what was happening. Ms. Fitzgerald was in shock and deeply embarrassed.

**L. <u>Ms. Fitzgerald was Damaged by Defendants' Illegal Conduct</u>**

59. At the time of her wrongful termination, Mr. Farhi intentionally withheld Ms. Fitzgerald's final wages. Ms. Fitzgerald did not receive her final paycheck until August 11, 2023,

SCHEIN LAW GROUP

which was a day late and grossly inaccurate. Defendants did not pay all compensation due and owing to Ms. Fitzgerald. Defendants did not correct the previous unlawful deductions of her vacation pay or sick pay previously owed. Defendants did not pay all earned and owed overtime, unreimbursed business expenses, meal and rest break premium pay, unpaid and earned commissions, and other wage and hour penalties owed.

60. Two days later, on or about August 13, 2023, Ms. Fitzgerald was hospitalized for a life-threatening condition, and underwent emergency surgery. Upon information and belief, Ms. Fitzgerald's condition was caused by the stress of the unlawful conduct by Defendants.

61. As a consequence of Defendants' conduct, Plaintiff has suffered and continues to suffer harm, including lost past and future income and employment benefits, damage to her reputation, lost wages, overtime, meal and rest break premiums, unpaid and earned commissions, penalties, unreimbursed business expenses, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

62. As a consequence of Defendants' conduct, Plaintiff has suffered and continues to suffer physical damages, including, gastrointestinal issues, psychological and emotional distress, panic attacks, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

63. At the time of the filing of this Complaint, Plaintiff is owed wages from Defendants. Defendants failed to pay those wages in accordance with California *Labor Code* § 200, *et. seq*.

64. Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by taking other adverse job actions against Plaintiff because of her gender, disability, and/or good faith complaints, and/or (b) Defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's rights to be free of discrimination, harassment, retaliation, unsafe and unhealthy work environment, and wage and hour violations.

65. In addition, Defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that Defendants' actions against Plaintiff

SCHEIN LAW GROUP

because of her gender, disability, and/or good faith complaints, were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a workplace free of harassment, discrimination, retaliation, unsafe and unhealthy work environment, and wage and hour violations.

66. In addition, Defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that Defendants asserted false (pretextual) grounds for adverse job actions, thereby causing Plaintiff hardship and deprive her of legal rights.

67. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

68. Prior to filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the California Civil Rights Department and receiving a right-to-sue letter.

**<u>FIRST CAUSE OF ACTION</u>**

**Harassment on the Basis of Sex and Gender**

**in Violation of Cal. Gov't Code § 12940(j)**

**(Against All Defendants, and DOES 1 to 10)**

69. Plaintiff incorporates the paragraphs above as though fully set forth herein.

70. At all times herein mentioned, the California Fair Employment and Housing Act ("FEHA"), Government Code section 12940, *et seq.,* was in full force and effect and was binding on Defendants employed five or more persons. This statute requires Defendants to refrain from sexually harassing their employees which creates a sexually hostile work environment. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

71. As identified herein, during Plaintiff's employment with Defendants, Defendants engaged in actions that constituted sexual harassment of Plaintiff and failed to take action against Mr. Farhi who sexually harassed Plaintiff because she is a woman/female. These actions created a hostile working environment for Plaintiff on the basis of her sex and gender.

72. All of these actions were severe and pervasive, and taken against Plaintiff's consent, will, and desires.

SCHEIN LAW GROUP

73. A reasonable woman and/or female in Plaintiff's circumstances would have considered the work environment created by Defendants to be hostile, intimidating, offensive, oppressive, and/or abusive – as Plaintiff considered it to be.

74. As a proximate result of Defendants' willful, knowing, and intentional creation of a hostile work environment, Plaintiff has sustained and continue to sustain damages, including losses of earnings and benefits, according to proof.

75. As a proximate result of Defendants' willful, knowing, and intentional creation of a hostile work environment, Plaintiff has suffered and continue to suffer physical damages, including, gastrointestinal issues, panic attacks, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

76. Defendants' creation of a hostile work environment was done intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

77. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are known.

## SECOND CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**In Violation of Cal. Gov't Code § 12940(a)**

**(Against Defendants Zellij Gallery, and Does-10)**

78. Plaintiff incorporates the paragraphs above as though fully set forth herein.

79. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on Defendant Zellij Gallery who employed five or more persons. This statute requires Defendants to refrain from discriminating against any employee because of her sex or gender. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

80. During Plaintiff's employment with Defendants, Mr. Farhi engaged in actions that have had a negative impact on the treatment of women intentionally engaging in sex/gender



SCHEIN LAW GROUP

Case 2:26-bk-12374-VZ Doc 35 Filed 10/19/26 Entered 10/19/26 17:00:58 Page 27 of

discrimination against Plaintiff, the only female at Zellij Gallery. Mr. Farhi provided unequal work/assignments, harassed, retaliated against, and took other adverse job actions and disparate treatment against Plaintiff because she is a woman and female.

81. Plaintiff is a qualified employee and was and is a member of a protected class.

82. Defendants, through their CEO, CFO, Secretary, Director and manager, exhibited sexist and misogynist motivations, intentions, and consciousness. Plaintiff believes and, on that basis, alleges that Defendants' real motivation was to treat her differently and take adverse employment actions against her because of her sex and/or gender.

83. On the basis of the above, Plaintiff believes and alleges that her gender was a substantial motivating reason in Defendants' adverse employment actions against her.

84. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

85. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

86. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

87. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

///

///

///

SCHEIN LAW GROUP

**THIRD CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activities**

**In violation of Cal. Gov't Code § 12940(h)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

88. Plaintiff incorporates the paragraphs above as though fully set forth herein.

89. At all relevant times, Defendant Zellij Gallery regularly employed five or more persons.

90. Plaintiff made numerous complaints throughout the course of her employment to Defendants regarding (1) discriminatory and harassing conduct directed at herself and other women; (2) unsafe working conditions; (3) improper payroll practices; and (4) illegal business practices.

91. Plaintiff's complaints to Defendants about sexual harassment, discrimination based on gender, disability, and/or other characteristics protected by FEHA, Government Code section 12900, et seq., and about illegal practices, were substantial motivating factors in Defendants' decision to retaliate and take other adverse job actions against Plaintiff.

92. On the basis of the above, Plaintiff believes and alleges that Defendants retaliated against her for her complaints.

93. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

94. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

95. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

96. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable

SCHEIN LAW GROUP

attorneys' fees and costs (including expert costs) in an amount according to proof.

**<u>FOURTH CAUSE OF ACTION</u>**

**Discrimination on the basis of Disability and/or Medical Condition**

**In violation of Cal. Gov't Code § 12940(a)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

97. Plaintiff incorporates the paragraphs above as though fully set forth herein.

98. At all times herein mentioned, FEHA, Government Code section 12940, et seq., was in full force and effect and was binding on Defendant Zellij Gallery who regularly employed five or more persons. This statute requires Defendants to refrain from discriminating against any employee because of an actual or perceived disability and/or medical condition. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

99. During Plaintiff's employment with Defendants, Defendants, through their supervisor, engaged in actions that had a negative impact on the treatment of persons who are disabled or perceived to be disabled. During Plaintiff's employment with Defendants, Defendants intentionally engaged in discrimination on the basis of disability and/or medical condition by harassing, discriminating against, taking adverse job actions against, and discharging persons who are disabled or perceived to be disabled with greater frequency than other employees.

100. Plaintiff was a qualified employee at the time of the termination of their employment and was a member of a protected class due to her actual and perceived disabilities and/or medical conditions. Plaintiff's actual and perceived disabilities and/or medical conditions (severe migraines) limited multiple major life activities. Plaintiff was able to perform her essential job duties, with reasonable accommodations.

101. Defendants, through their manager and supervisor, exhibited discriminatory motivations, intentions, and consciousness; Mr. Farhi threatened Plaintiff two times to find a new employer for her migraines. Plaintiff believes and, on that basis, alleges that Defendants' real motivation was to discharge her because of her protected status.

SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 48 Filed 10/19/26 Entered 10/19/26 17:00:58 Desc Main Document Page 38 of 111

102. On the basis of the above, Plaintiff believes and alleges that her actual and perceived disabilities and/or medical conditions were a substantial motivating reason in Defendants' adverse employment actions, against Plaintiff because of her disability and/or medical condition.

103. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

105. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

106. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

## FIFTH CAUSE OF ACTION

**Failure to Accommodate and Failure to Engage in the Interactive Process**

**In Violation of Cal. Gov't Code §§ 12940(m)-(n)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

107. Plaintiff incorporates the paragraphs above as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, et seq., was in full force and effect and was binding on Zellij Gallery who regularly employed five or more persons and required Defendants to refrain from discriminating against any employee on the basis of a disability (including actual, perceived, history of, etc.). Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

SCHEIN LAW GROUP

109. Plaintiff was a qualified employee at the time of the failure to accommodate, and failure to engage in the interactive process, and termination of her employment, she performed her jobs in an exemplary manner, and recently had experienced actual and perceived disabilities and/or medical conditions – severe migraines – which required reasonable accommodations. Defendants refused to engage in the interactive process, refused to allow her to work from home, refused to allow her to take sick or disability leave, and refused to accommodate Plaintiff. Defendants intentionally discriminated against Plaintiff in violation of the law.

110. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodations could be made so that she would be able to perform the essential job requirements.

111. Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodations could be made, and instead, Mr. Farhi told her to find a new employer, and soon after terminated Plaintiff.

112. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

113. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

114. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

115. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

///

///

**SIXTH CAUSE OF ACTION**

**Failure to Prevent Harassment, Discrimination, and Retaliation**

**In Violation of Cal. Gov't Code § 12940(k)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

116. Plaintiff incorporates the paragraphs above as though fully set forth herein.

117. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on Defendant Zellij Gallery. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent harassment, discrimination and retaliation from occurring." Prior to filing the instant Complaint, Plaintiff filed a timely administrative charge and received a right-to-sue letter.

118. During the course of Plaintiff's employment, Defendants failed to prevent Mr. Farhi from engaging in intentional actions that resulted in Plaintiff being sexually harassed and treated less favorably because of Plaintiff's protected status (i.e., gender/sex, disability/medical condition, and/or complaints). During the course of Plaintiff's employment, Defendants failed to prevent Mr. Farhi from engaging in unjustified employment practices against employees in such protected classes.

119. Plaintiff believes, and on that basis alleges, that her gender/sex, disability/medical condition, complaints, and/or other protected statuses or protected activities were substantial motivating factors in Defendants employees' mistreatment of her.

120. As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiff has sustained and continue to sustain substantial losses of earnings and other employment benefits.

121. As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.



SCHEIN LAW GROUP

122. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

123. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

**SEVENTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

124. Plaintiff incorporates the paragraphs above as though fully set forth herein.

125. Defendants wrongfully terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, Plaintiff's employment was wrongfully terminated in part because of her protected statuses and/or good faith complaints. These actions were in violation of FEHA, the California Constitution, and California Labor Code.

126. As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

127. As a proximate result of Defendants' wrongful termination of Plaintiff's employment in violation of fundamental public policies, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

128. As a result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered general and special damages in sums according to proof.

129. Defendants' wrongful termination of Plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

130. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.



SCHEIN LAW GROUP

**<u>EIGHTH CAUSE OF ACTION</u>**

**Intentional Infliction of Emotional Distress**

**(Against All Defendants and DOES 1 to 100)**

131. Plaintiff incorporates the paragraphs above as though fully set forth herein.

132. Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress. The conduct set forth above caused Plaintiff to suffer debilitating emotional distress, which also manifested in physical symptoms and led to emergency surgical intervention.

133. Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, and harassing Plaintiff, would devastate Plaintiff and cause her extreme hardship.

134. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

135. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

136. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

**<u>NINTH CAUSE OF ACTION</u>**

**Retaliation in Violation of Labor Code § 1102.5**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

137. Plaintiff incorporates the paragraphs above as though fully set forth herein.

138. At all relevant times, Labor Code section 1102.5 was in effect and was binding on Defendants. This statute prohibits Defendants from retaliating against any employee, including Plaintiff, for raising complaints of illegality.

SCHEIN LAW GROUP

139. Plaintiff raised complaints of illegality while she worked for Defendants to Defendants, including, but not limited to, unlawful harassment, discrimination, wage and hour violations, not allowing her to attend jury duty, unsafe working conditions, failure to pay wages, and illegal business practices.

140. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

141. As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

142. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

143. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

144. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

**TENTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code § 6310 et. seq.**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1 to 10)**

145. Plaintiff incorporates the paragraphs above as though fully set forth herein.

146. Plaintiff is an employee of Defendants and actions taken against her were by Mr. Farhi, acting on behalf of Defendants.

147. California Labor Code § 6310 prohibits discrimination or retaliation in the terms and conditions of employment against an employee for complaining about unsafe or unhealthy working conditions or practices.

148. Plaintiff raised complaints during her employment with Defendants to Defendants of unsafe and unhealthy working conditions and practices.



SCHEIN LAW GROUP

149. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

150. As a proximate result of Defendants willful, knowing, and intentional violations of Labor Code section 6310, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

151. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

152. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

153. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

**Retaliation in Violation of Labor Code § 98.6, et. Seq.**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1 to 10)**

154. Plaintiff incorporates the paragraphs above as though fully set forth herein.

155. At all relevant times, Labor Code section 98.6 was in effect and was binding on Defendants. This statute prohibits Defendants from retaliating against any employee, including Plaintiff, for raising wage and hour complaints.

156. Plaintiff repeatedly raised complaints of violations of wage and hour laws during her employment with Defendants to Defendants.

157. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

158. As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code section 98.6., Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.



SCHEIN LAW GROUP

159. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

160. As a result of Defendants' violation of Labor Code section 98.6, Plaintiff is entitled to civil penalties for each violation of this section.

161. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

162. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

163. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**TWELFTH CAUSE OF ACTION**

**Failure to Pay All Compensation Due and**

**Owing to Plaintiff and Late Payment of Wages**

**(Labor Code Sections 204 and 210)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

164. Plaintiff incorporates the paragraphs above as though fully set forth herein.

165. California Labor Code §§ 204(a) and 210 require Defendants to pay all wages due and owing to Plaintiff, a non-exempt employee, during her employment twice a month and may not collect or receive any portion of an employee's wages. The amount of wages owed to Plaintiff will be stated according to proof at trial.

166. Defendants willfully failed to pay Plaintiff all wages due and owing to her during employment as to actual hours worked, sick pay, meal and rest break premiums, and commissions earned as required by the California Labor Code. Defendants are also liable to Plaintiff for penalties

SCHEIN LAW GROUP

arising from the repeated late paid wages in the amount of $100 for the first violation and $200 for each subsequent violation. In addition, Defendants also must pay 25% of the wages that were paid late.

167. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**THIRTEENTH CAUSE OF ACTION**

**Failure to Pay Overtime Wages**

**(Labor Code Sections 510 and 558)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

168. Plaintiff incorporates the paragraphs above as though fully set forth herein.

169. California Labor Code Sections 510 and 558 entitle non-exempt employees to overtime premiums for hours worked in excess of eight (8) hours in a given workday or forty (40) hours in a given workweek, or on the seventh day worked in a single workweek. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

170. Plaintiff was misclassified as salaried, exempt employee, and she worked in excess of eight hours in a workday and/or in excess of forty hours in a workweek, without proper overtime compensation. Defendants unlawfully failed to pay Plaintiff the proper overtime compensation.

171. As a result of Defendants' conduct, Plaintiff is entitled to unpaid overtime wages, interest, attorneys' fees and costs.

172. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based

on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**<u>FOURTEENTH CAUSE OF ACTION</u>**

**Failure to Pay Minimum Wages**

**(Labor Code Sections 1194, 1197, 1197.1)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

173. Plaintiff incorporates the paragraphs above as though fully set forth herein.

174. California Labor Code Sections 1194, 1197, 1197.2 entitle non-exempt employees to an amount equal to or greater than the minimum wage for all hours worked. All hours must be paid at the statutory or agreed rate and no part of this rate of pay may be used as a credit against a minimum wage obligation.

175. Defendants did not compensate Plaintiff for all hours worked in compliance with California and West Hollywood's Ordinance.

176. As a result of Defendants' conduct, Defendants are liable for unpaid minimum wages, liquidated damages, attorneys' fees and costs.

177. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

///

///

///

SCHEIN LAW GROUP

**FIFTEENTH CAUSE OF ACTION**

**Failure to Provide Meal Periods**

**(Labor Code Sections 226.7, 512(a), 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

178. At all relevant times herein set forth, the applicable IWC Wage Order(s) and California Labor Code sections 226.7, 512(a) and 1198 were applicable to Plaintiff's employment by Defendants.

179. At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer, and any individual on behalf of an employer, may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041-1042.

180. At all relevant times herein set forth, California Labor Code section 226.7 and 512(a) provide that no employer, and any individual on behalf of an employer, shall require an employee to work during any meal period mandated by an applicable order of the IWC.

181. At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers, and any individual on behalf of an employer, to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

182. As stated, Defendants' company-wide failure to schedule meal periods and failure to provide adequate meal break coverage prevented Plaintiff from taking compliant meal periods. As a result of this practice and/or policy, Plaintiff was frequently required to continue to perform



SCHEIN LAW GROUP

their duties, such as tending to clients, without being able to take a timely, compliant meal period. Additionally, Defendants discouraged and impeded Plaintiff from taking compliant breaks by requiring her to stay in the showroom all day, without providing her with meal break coverage.

183. Plaintiff did not sign valid meal break waivers on days that she was entitled to meal periods and was not relieved of all duties.

184. As a result, Plaintiff had to work through part or all of their meal periods, have her meal periods interrupted, and/or wait extended periods of time before taking meal periods. For example, Plaintiff was sometimes made to work over five (5) hours straight before Defendants permitted and authorized her to take their meal periods. Many of Plaintiff' meal periods that she did take were late (after they had already worked five (5) hours or more into his shift) or not at all.

185. At all times herein mentioned, Defendants knew or should have known that as a result of these policies, Plaintiff was prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods and that Defendants did not pay Plaintiff's meal period premium wages when she was late, short, and/or interrupted.

186. Defendants 's conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198.

187. As a result of Defendants' conduct as alleged herein, Plaintiff has been required to retain counsel to represent them. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial. *Betancourt v. OS Restaurant Services, LLC*, Case No. B293624 (Cal. Ct. App. 9/12/22); *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93.

///

///

///



SCHEIN LAW GROUP

**SIXTEENTH CAUSE OF ACTION**

**Failure to Provide Rest Periods**

**(Labor Code Sections 226.7 and 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

188. Plaintiff incorporates the paragraphs above as though fully set forth herein.

189. At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 and 1198 were applicable to Plaintiff's employment by Defendants.

190. At all relevant times, the applicable IWC Wage Order provides that "[e]very employer and any individual on behalf of an employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

191. At all relevant times, California Labor Code section 226.7 provides that no employer and any individual on behalf of an employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff were entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each workday that a required rest period was not provided.

192. During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff to take ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, Defendants similarly failed to schedule rest periods for Plaintiff on a company-wide basis. Defendants 's management would request that employees refrain from taking rest breaks in order to provide service to clients. As a result, Plaintiff would sometimes work in excess of three and one-half (3½) hours and in excess of six (6) hours without receiving all uninterrupted ten (10) minute rest periods to which they were entitled.

193. Upon information and belief, Defendants engaged in conduct that prevented Plaintiff from being relieved of all duty in order to take compliant rest periods, requiring her to

SCHEIN LAW GROUP

work during rest periods. At the same time, Defendants implemented a systematic, company-wide policy to not pay rest period premiums.

194. As a result, Plaintiff was denied rest periods and failed to pay the full rest period premiums due, in violation of Labor Code sections 226.7, 1198, and the applicable IWC Wage Order.

195. As a result of Defendants' conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial. *Betancourt v. OS Restaurant Services, LLC*, Case No. B293624 (Cal. Ct. App. 9/12/22); *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93.

**SEVENTEENTH CAUSE OF ACTION**

**Failure to Reimburse Necessary Business Expenses**

**(Labor Code Section 2802)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

196. Plaintiff incorporates the paragraphs above as though fully set forth herein.

197. At all relevant times, Labor Code Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

198. Plaintiff incurred reasonable and necessary expenses in the course of completing her job duties which were not reimbursed by Defendants. These expenses include, but are not limited to, monthly cellular phone, voice and data plan, parking ticket, and mileage for trips related to her work for Zellij Gallery.

199. Plaintiff is entitled to reimbursement for those necessary expenditures, plus interest and attorneys' fees and costs under Labor Code Section 2802.

SCHEIN LAW GROUP

200. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**EIGHTEENTH CAUSE OF ACTION**

**Failure to Provide and Maintain Compliant Wage Statements**

**(Labor Code Sections 226(a) and 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

201. Plaintiff incorporates the paragraphs above as though fully set forth herein.

202. At all relevant times herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual; number of hours actually worked; gross wages earned; and net wages earned. *See also,* IWC Wage Order ¶ 7.

203. During the relevant time period, Defendants have knowingly and intentionally provided Plaintiff with untimely, uniform, incomplete, and inaccurate wage statements. Specifically, Defendants violated sections 226(a)(1), 226(a)(2), and 226(a)(5), upon which Plaintiff repeatedly complained about to Mr. Farhi. Because Defendants did not pay her for all hours actually worked, denied her earned commissions, denied her meal and rest break premiums, Defendants did not list the correct amount of gross wages earned by Plaintiff in compliance with sections 226(a)(1) and 226(a)(2). For the same reason, Defendants failed to list the correct amount of net wages earned by Plaintiff in violation of section 226(a)(5).

SCHEIN LAW GROUP

204. Defendants willfully failed to maintain accurate payroll records for Plaintiff showing the daily hours she actually worked and the wages paid thereto as a result of failing to record all hours that she worked, including, overtime hours.

205. In addition, Plaintiff failed to provide a timely wage statement to the Plaintiff each pay period.

206. California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Plaintiff in violation of section 1198.

207. Because Defendants violations of 226(a) and 1198 were committed against Plaintiff, Plaintiff is entitled to recover civil penalties pursuant to sections 226(e), 226.3.

SCHEIN LAW GROUP

**<u>NINETEENTH CAUSE OF ACTION</u>**

**Failure to Pay all Compensation Due upon Discharge**

**(Violation of California Labor Code Sections 201 and 203)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

208. Plaintiff incorporates the paragraphs above as though fully set forth herein.

209. California Labor Code Sections 201 and 203 require Defendants to pay all compensation due and owning to Plaintiff immediately upon termination. Labor Code Section 203 provides that if an employer willfully fails to pay all compensation promptly upon termination, as required by Sections 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

210. Defendants willfully failed to pay Plaintiff all compensation due and owing to her on August 10, 2023, the day of her termination. As a result, Plaintiff is entitled to 30 days of waiting time penalties, plus attorneys' fees and costs of suit.

## TWENTIETH CAUSE OF ACTION

**Unfair Business Practices**

**In Violation of Cal. Bus. & Prof. Code § 17200, et seq.**

**(Against Defendants Zellij Gallery and DOES 1-10)**

211. Plaintiff incorporates the paragraphs above as though fully set forth herein.

212. Defendants have engaged in Unfair Business Practices in violation of Business and Professions Code Sections 17200 et seq. by engaging in activities that are unlawful, unfair, and fraudulent as alleged herein.

213. As a proximate and legal result of Defendants' aforesaid wrongful conduct, Plaintiff has been harmed in that Plaintiff has suffered the loss of past and future wages and earnings, benefits, and such additional amounts of money Plaintiff would have received if Defendants had not terminated Plaintiff and engaged in unfair business practices. As a result of such wrongful termination and unfair business practices and its consequences, Plaintiff has suffered additional economic harm and damages, to be stated according to proof at trial.

## DEMAND FOR JURY TRIAL

214. Plaintiff hereby demand a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and DOES 1 through 10, as follows:

(a) For economic damages for loss of past and future earnings, including, but not limited to earned and unpaid wages, penalties, earned but unpaid commissions, unreimbursed business expenses, sick pay not paid to her, improperly docked vacation pay,

SCHEIN LAW GROUP

as well as a loss of earning capacity, just promotions, advancement and employment benefits, past, current, and future medical care, other economic damages, including incidental fees and/or other costs, and/or other economic losses, all in excess of this Court's minimum jurisdictional limits and according to proof;

(b) For general damages for physical injuries, pain and suffering, mental and emotional trauma and anguish, and for the loss of enjoyment of the activities of life, according to proof;

(c) For attorneys' fees, as provided by applicable provisions of the FEHA, the California *Labor Code*, and/or other statutes, according to proof;

(d) For punitive damages, as against each named Defendant, according to proof;

(e) For costs of suit, and according to proof;

(f) For penalties as provided for by the California *Labor Code*, including sections 210, 225.5, 226.3, 558 for violations of California Labor Code sections 201, 204, 226(a), 226.7, 510, 512(a), and 1198.

(g) For an accounting;

(h) For prejudgment interest from the first date and highest rate allowed by law, and according to proof;

(i) For injunctive relief; and

(j) For such other and further relief as the Court deems just and proper.

///

///

///

SCHEIN LAW GROUP

Dated: December 22, 2023

SCHEIN LAW GROUP

By: *Josh Schein*
JOSHUA D. SCHEIN
HELEN YOU
ATTORNEYS FOR PLAINTIFF,
EVERLY FITZGERALD

Dated: December 22, 2023

**SHERMAN LAW CORPORATION**

By: *Lisa Sherman*
LISA G. SHERMAN, ESQ.
ATTORNEYS FOR PLAINTIFF,
EVERLY FITZGERALD

SCHEIN LAW GROUP

# EXHIBIT "B"

**RAMLO LAW**
Kurt Ramlo (SBN 166856)
15021 Ventura Blvd. #544
Los Angeles, CA 91403
RamloLegal@gmail.com
Telephone: (310) 880-9208

Attorney for Plaintiff Everly Fitzgerald

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>Faissel Vincent Farhi,<br><br>Debtor. | Case No. 2:26-bk-12374-WB<br>Hon. Julia Brand<br><br>Chapter 13 |
| Everly Fitzgerald,<br><br>Plaintiff,<br><br>v.<br><br>Faissel Vincent Farhi,<br><br>Defendant. | Adv. Prdg. No.<br><br>**Complaint to Determine Non-Dischargeability of Debtor Under 11 U.S.C. §§ 1328(a)(4), 523(a)(2)(A), and 523(a)(4)** |

Everly Fitzgerald, plaintiff, alleges:

**JURISDICTION AND VENUE**

1. Defendant Faissel Vincent Farhi (the "**Defendant**" or "**Debtor**") filed his *Voluntary Petition for Individuals Filing for Bankruptcy* under Chapter 13 of the United States Bankruptcy Code in this Court on or about March 12, 2026, commencing *In re Faissel Vincent Farhi*, Case No. 2:26-bk-12374-WB (the "**Chapter 13 Case**").

2. This Court has jurisdiction over this adversary proceeding under the provisions of 28 U.S.C. §§ 157 and 1334. This adversary proceeding is brought pursuant to 11 U.S.C.

Case 2:26-bk-12374-WB Doc 25 Filed 06/15/26 Entered 06/15/26 13:56:56 Desc Main Document Page 2 of 51

§§ 523(a)(2)(B) and 523(a)(6) and Bankruptcy Rule 7001.

3. The claims for relief set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

4. This adversary proceeding relates to the Chapter 13 Case. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff does not consent to entry of a final order or judgment by the Bankruptcy Court.

5. Venue is proper pursuant to 28 U.S.C. § 1409.

**PARTIES**

6. Plaintiff is the plaintiff in a prepetition action against the Debtor pending in Superior Court of the State of California, County of Los Angeles, in the case of *Everly Fitzgerald v. Zellij Gallery Inc., a California corporation, Faissel Farhi, an individual, and DOES 1-10*, Case No. 23STCV31387 (the "**State Court Action**"). Plaintiff seeks in excess of $5,000,000 in damages in that action.

7. Defendant Faissel Vincent Farhi is the Debtor in the Chapter 13 Case and the defendant in the State Court Action.

**GENERAL ALLEGATIONS**

8. On December 22, 2023, Plaintiff filed a complaint ("**State Court Complaint**") in the State Court Action against two defendants including the Defendant in this action, alleging twenty causes of action including:

1. Sexual Harassment;
2. Sex/Gender Discrimination;
3. Retaliation under FEHA;
4. Disability Discrimination;
5. Failure to Accommodate/Engage in the Interactive Process;
6. Failure to Prevent Harassment, Discrimination, and Retaliation;
7. Wrongful Termination;
8. Intentional Infliction of Emotional Distress;
9. Violation of Labor Code §1102.5;

10. Violation of Labor Code §6310;

11. Violation of Labor Code §98.6;

12. Failure to Pay All Compensation Owed and Late Pay;

13. Overtime;

14. Failure to Pay Minimum Wage;

15. Failure to Provide Meal Periods;

16. Failure to Provide Rest Periods;

17. Failure to Reimburse Business Expenses

18. Failure to Provide and Maintain Compliant Wage Statements

19. Failure to Pay All Compensation Due at Discharge

20. Unfair Business Practices

Attached as **Exhibit 1** is a true and correct copy of the State Court Complaint. Plaintiff incorporates the allegations of the State Court Complaint into this complaint, as if all those allegations of were fully restated and set forth herein.

9. As fully described and details in the State Court Complaint, Defendant maliciously and willfully tormented, harassed, and discriminated against Plaintiff. When Plaintiff opposed and made complaints about Defendant's unsafe and illegal business conduct, Defendant maliciously and willfully retaliated against Plaintiff, escalating his wrongful conduct with the intent to force Plaintiff to quit her job. Defendant eventually terminated Plaintiff in a fit of rage, while accompanied by the West Hollywood Sheriff's Department, telling Plaintiff that the "Sheriff is here to escort you out." Defendant refused Plaintiff's oral request that he provide Plaintiff with the grounds for her termination. As Plaintiff attempted to make the same request in writing via email, which Defendant initially agreed to allow her to do, Defendant screamed at Plaintiff, ripped the power cords for the computer she was using to draft and send the email, and asked the West Hollywood Sheriff's Department officer to remove her from the building.

10. Two days later, Plaintiff was admitted to the hospital for immediate surgery for a life-threatening condition caused by, directly attributed to, and exacerbated by Defendant's misconduct and the emotional distress resulting from that wrongful misconduct.

Case 2:26-bk-12374-WB Doc 23 Filed 06/15/26 Entered 06/15/26 17:00:18 Desc
Main Document Page 4 of 52

11. In addition to economic harm from Defendant's fraudulent conduct with respect to her wages and other wage-related statutory violations, wrongful retaliation for her complaining about Defendant's wrongful conduct and unfair business practices, and his malicious and willful torment, harassment, and discrimination to deprive Plaintiff of her economic rights and her rights to be free from harassment, discretion, and retaliation, Plaintiff suffered severe and ongoing emotion distress and physical injuries as a result of Defendant's malicious, willful, and fraudulent misconduct.

**FIRST CLAIM FOR RELIEF**

**(11 U.S.C. § 1328(a)(4))**

12. Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 11, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth in this claim for relief.

13. Defendant's misconduct giving rise to all the causes of action set forth in the State Court Complaint gave rise to debts, in the form of rights to restitution and damages for Defendant's tortious misconduct and willful and malicious injury to Plaintiff. Defendant's misconduct was an egregious, willful, and malicious violation of California's public policy against sexual harassment, sex/gender discrimination, retaliation for engaging in protected workplace activity, disability and medical condition discrimination, wrongful termination in violation of public policy, retaliation for raising and reporting illegality, wage and hour laws violations, discriminating and retaliating against employees who report unsafe and unhealthy working conditions or practices, failure to timely pay wages, overtime compensation, minimum wages, business expense reimbursement, and all compensation due during employment and at discharge, failure to provide meal periods and rest periods, and failure to provide compliant wage statements, and Defendant's other unfair business practices set forth in the State Court Complaint.

14. Defendant's misconduct included a willful and malicious failure to accommodate Plaintiff's disability and medication condition or engage in the statutory process to address Plaintiff's disability and medication condition, willful and malicious failure to prevent the harassment, discrimination, and retaliation suffered by Plaintiff, willful and malicious wrongful

termination of Plaintiff, and Defendant willfully and maliciously intentional infliction of emotional distress.

15. Defendant's misconduct constituted the willful and malicious injury of Plaintiff by Defendant that caused personal injuries and physical damage to Plaintiff, including gastrointestinal issues, psychological and emotional distress, panic attacks, humiliation, and mental and physical pain and anguish.

**SECOND CLAIM FOR RELIEF**

**(11 U.S.C. § 523(a)(2)(A)**

16. Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 11, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth in this claim for relief.

17. Defendant's misconduct relating to his willful and malicious failure to provide Plaintiff with the compensation she earned, as described in the twelfth, thirteenth, fourteenth, seventeenth, and nineteenth causes of action and related portions of the State Court Complaint, constituted actual fraud to obtain the services of Plaintiff.

**THIRD CLAIM FOR RELIEF**

**(11 U.S.C. § 523(a)(4)**

18. Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 11, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

19. Defendant's misconduct relating to his willful and malicious failure to provide Plaintiff with the compensation she earned, as described in the twelfth, thirteenth, fourteenth, seventeenth, and nineteenth causes of action and related portions of the State Court Complaint constituted the felonious taking of Plaintiff's property with the fraudulent intent to convert it to his own use or to permanently deprive Plaintiff of that property.

**PRAYER**

Plaintiff prays for judgment against Defendant as follows:

A. For a determination that Plaintiff's claims in the State Court Complaint, including

the punitive damages, penalties, attorneys' fees, and all other remedies for losses or damages caused by Defendant's willful or malicious injury of Plaintiff available under applicable law, whether or not currently set forth in the State Court Complaint, are nondischargeable under 11 U.S.C. § 1328(a);

B. For a determination that Plaintiff's claims for Defendant's actual fraud in obtaining the services of Plaintiff, including penalties, attorneys' fees, and all other remedies for losses or damages caused by Defendant's fraud available under applicable law, whether or not currently set forth in the State Court Complaint, are nondischargeable under 11 U.S.C. § 523(a)(2)(A);

C. For a determination that Plaintiff's claims for the theft of her compensation duly earned, including penalties, attorneys' fees, and all other remedies for losses or damages caused by Defendant's larceny available under applicable law, whether or not currently set forth in the State Court Complaint, are nondischargeable under 11 U.S.C. § 523(a)(4);

D. For an award of attorneys' fees and costs; and

E. For such other and further relief as the Court deems jury and proper.

Dated: June 15, 2026

**RAMLO LAW**

By: */s/ Kurt Ramlo*
Attorney for Plaintiff Everly Fitzgerald

# EXHIBIT 1

SCHEIN LAW GROUP

Electronically FILED by Superior Court of California, County of Los Angeles 12/22/2023 4:17 PM David W. Slayton, Executive Officer/Clerk of Court, By E. Galicia, Deputy Clerk

Joshua D. Schein (State Bar No. 264055)
Josh@ScheinLawGroup.com
Helen You (State Bar No. 329057)
Helen@ScheinLawGroup.com
2029 Century Park East, Suite 400
Los Angeles, California 90069
Telephone: (424) 355-8555
Facsimile: (424) 355-8087
Attorneys for Plaintiff
Everly Fitzgerald

**SHERMAN LAW CORPORATION**
Lisa G. Sherman (State Bar No. 176548)
Lisa@Sherm-Law.com
6300 Wilshire Blvd, Suite 880
Los Angeles, California 90048
Telephone: (323) 488-2087
Attorneys for Plaintiff
Everly Fitzgerald

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

EVERLY FITZGERALD an individual,

Plaintiff,

vs.

ZELLIJ GALLERY INC. a California Corporation; FAISSEL FARHI, an individual, and DOES 1-10

Defendants.

**COMPLAINT FOR:**

23STCV31387

1. **Sexual Harassment**
2. **Sex/Gender Discrimination**
3. **Retaliation under FEHA**
4. **Disability Discrimination**
5. **Failure to Accommodate/Engage in the Interactive Process**
6. **Failure to Prevent Harassment, Discrimination, and Retaliation**
7. **Wrongful Termination**
8. **Intentional Infliction of Emotional Distress**
9. **Violation of Labor Code §1102.5**
10. **Violation of Labor Code §6310**
11. **Violation of Labor Code §98.6**
12. **Failure to Pay All Compensation Owed and Late Pay**
13. **Overtime**
14. **Failure to Pay Minimum Wage**
15. **Failure to Provide Meal Periods**
16. **Failure to Provide Rest Periods**
17. **Failure to Reimburse Business Expenses**

**18. Failure to Provide and Maintain Compliant Wage Statements**
**19. Failure to Pay All Compensation Due at Discharge**
**20. Unfair Business Practices**

**REQUEST FOR JURY TRIAL**

SCHEIN LAW GROUP

NOW COMES, Plaintiff EVERLY FITZGERALD ("Ms. Fitzgerald" or "Plaintiff") who alleges causes of action against Defendants ZELLIJ GALLERY INC. ("Zellij Gallery") a California Corporation, FAISSEL FARHI, ("Mr. Farhi") an Individual, and DOES 1-10 (collectively, the "Defendants") as follows:

**INTRODUCTION**

1. This action arises out of Defendants' torment and harassment of, and discriminatory conduct directed at Everly Fitzgerald. Ms. Fitzgerald was a dedicated and exemplary Executive Assistant to Mr. Farhi, the owner of the Zellij Gallery. However, after Ms. Fitzgerald complained of an ongoing hostile work environment and illegal business practices, she was wrongfully terminated by Mr. Farhi in a fit of rage.

2. Ms. Fitzgerald, relying on Mr. Farhi's false promises of maintaining a safe and productive work environment, accepted employment with Zellij Gallery to further her career. However, from the outset of her employment, Mr. Farhi subjected Ms. Fitzgerald to a litany of unsafe and illegal business practices, including, but not limited to, unwelcome and offensive sexual overtures, blatant discrimination, and numerous wage hour violations.

3. Ms. Fitzgerald repeatedly and vehemently opposed Mr. Farhi's unsafe and illegal business conduct and made multiple complaints. In response, Mr. Farhi cruelly and relentlessly retaliated against Ms. Fitzgerald with the intent of forcing Ms. Fitzgerald to quit her job. Mr. Farhi's retaliatory acts included, but were not limited to, interference with Ms. Fitzgerald's ability to work, reassignment of job duties, micromanagement, and baseless disciplinary action.

4. Shortly after Ms. Fitzgerald complained of Mr. Farhi's retaliation, on August 10, 2023, Defendants terminated Ms. Fitzgerald. When Ms. Fitzgerald asked why she was being terminated, Mr. Farhi refused to provide a reason for her termination. When Ms. Fitzgerald attempted to send an email to Mr. Farhi an email requesting an explanation for her termination, Mr. Farhi screamed at her and ripped the computer's power cord off the wall. Mr. Farhi even called the West Hollywood Sheriff's Department to escort Ms. Fitzgerald from the building, and they witnessed the entire interaction.

SCHEIN LAW GROUP

5. Two days later, on or about August 12, 2023, Ms. Fitzgerald was admitted to a Hospital Emergency Room to undergo immediate surgery for a life-threatening condition. Upon information and belief, Ms. Fitzgerald's condition is directly attributable to, and was exacerbated by, the emotional distress she suffered from Defendants' unlawful conduct.

6. Defendants' malicious harassment, discrimination and retaliatory conduct has caused Ms. Fitzgerald to lose wages and suffer other economic harm, subject to proof at trial. As a result of Defendants' conduct, Plaintiff also has suffered severe and ongoing emotional distress and physical injuries, subject to proof at trial.

## THE PARTIES

7. At all times relevant, Ms. Fitzgerald was and is an adult residing in the County of Los Angeles in the State of California.

8. At all times relevant, Defendant Zellij Gallery was and is a California corporation doing business in the State of California. Defendant Zellij Gallery works with architects and design firms to provide high-end Moroccan tiles.

9. At all times relevant, Defendant Mr. Farhi was and is an adult resident of the State of California. At all relevant times, Mr. Farhi was and is the owner of Zellij Gallery. Mr. Farhi exercised and continues to exercise substantial and exclusive authority in corporate decision making, ultimately dictating all of Zellij Gallery's policies and practices. Mr. Farhi also qualifies as a "person acting on behalf of an employer" under Labor Code § 558.1 and is liable for the unpaid wages and penalties alleged in this Complaint.

10. Defendants misclassified Plaintiff as a salaried exempt employee, earning approximately $45,000 per annum. In her employment as an Executive Assistant, Ms. Fitzgerald did not spend more than 50% of her workday exercising independent judgment or discretion. Ms. Fitzgerald's job duties were always subject to the direction and discretion of Mr. Farhi. Due to the character of her job duties and wages she received, the law required Defendants to classify Ms. Fitzgerald as a non-exempt employee.

11. The true names and capacities, whether individual, plural, corporate, partnership,



SCHEIN LAW GROUP

associate or otherwise, of DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff. Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE was, and is, negligently, recklessly, and/or intentionally responsible for the events and happenings hereinafter referred to, and thereby negligently, recklessly, and/or intentionally legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the fictitiously sued Defendants' true names and capacities, after the same have been ascertained.

12. At all relevant times, each of the Defendants ratified each and every act or omission complained of herein. At all relevant times, each of the Defendants aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

13. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

SCHEIN LAW GROUP

## ALTER EGO ALLEGATIONS

14. Plaintiff is informed and believes and thereon alleges that some of the defendants, and entities named as Defendants herein, including but not limited to Zellij Gallery, Mr. Farhi, and DOES 1-10, and each of them, were at all times relevant the alter ego corporations of one another.

15. All Defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, harassment, and failure to pay wages and benefits alleged in this Complaint, which conduct is prohibited under California Government Code section 12940, et seq. and the California Labor Code. All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's

damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

**JOINT EMPLOYER ALLEGATIONS**

16. Under California law, Defendants Zellij Gallery, and Mr. Farhi, are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff. Defendants Zellij Gallery and Mr. Farhi, had the power to hire and fire Plaintiff, supervise and control her work schedule and/or terms and conditions of employment, determined her rate of pay, and maintained her employment records.

17. Defendants Zellij Gallery and Mr. Farhi and Does 1-10 suffered or permitted Plaintiff to work and/or “engaged” Plaintiff so as to create a common law employment relationship. As joint employers of Plaintiff, Defendants Zellij Gallery, Mr. Farhi and Does 1-10 are jointly and severally liable for the civil penalties and all other relief available to Plaintiff under the law. Plaintiff is informed and believes and thereon alleges that at all relevant times, Defendants Zellij Gallery, Mr. Farhi and Does 1-10, and each of them, have acted as joint employers with respect to Plaintiff because Defendants Zellij Gallery, Mr. Farhi, and Does 1-10 have:

(a) jointly exercised meaningful control over the work performed by the Plaintiff;

(b) jointly exercised meaningful control over Plaintiff’s wages, hours, and

SCHEIN LAW GROUP

working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff;

(c) jointly required that Plaintiff perform work which is an integral part of Defendants' businesses; and

(d) jointly exercised control over Plaintiff as a matter of economic reality in that Plaintiff was dependent on Defendants, who shared the power to set the wages of Plaintiff and determine her working conditions, and who jointly reaped the benefits from the underpayment of her wages and noncompliance with other statutory provisions governing her employment.

## JURISDICTION

18. This Court has personal jurisdiction over Plaintiff, because of her residence in the County of Los Angeles, State of California.

19. Pursuant to Code of Civil Procedure section 410.10, this action lies within the general jurisdiction of this Court, because the causes of action arise under California law and Defendants reside and/or do business within California.

20. The unlawful acts committed by Defendants, as described in this Complaint, occurred within the State of California.

21. This Court has personal jurisdiction over Defendant Zellij Gallery, because it conducts substantial business in the County of Los Angeles, State of California.

22. This Court has personal jurisdiction over Defendant Mr. Farhi, because of his residence in the State of California.

## GENERAL ALLEGATIONS

23. On or about December 9, 2020, Plaintiff, who identifies as female and a woman, was hired by Mr. Farhi, as his Executive Assistant. Upon information and belief, Mr. Farhi is the owner, Director, President, CEO, CFO, and Secretary of Zellij Gallery.

24. Plaintiff began her employment on or about January 4, 2021, at Zellij Gallery's

SCHEIN LAW GROUP

showroom located in West Hollywood, California. Of the approximately five or more employees who worked for Zellij Gallery during the relevant time period, only Plaintiff and Mr. Farhi worked in the showroom. Plaintiff's job duties included, without limitation, greeting clients, educating clients about the products, answering calls and responding to emails, creating trade accounts, checking out mosaic tile samples, shipping color samples, generating and editing sales estimates, converting estimates into invoices, creating and transmitting payment links to customers, verifying received payments, adding invoices to order trackers, sending payment reminders, submitting paid invoices to warehouse and manufacturing, and updating inventory reports. The majority of Plaintiff's tasks required her to use Zellij Gallery's Quickbooks accounts. Plaintiff did not spend more than 50% of her workday exercising independent judgment or discretion in completing these tasks.

**A. <u>Defendants Intentionally Misclassified Ms. Fitzgerald</u>**

25. Defendants classified Plaintiff as an exempt, salaried employee. As such, Defendants did not pay Plaintiff overtime wages for hours worked in excess of eight (8) hours a day or forty (40) hours per week. Nor did Defendants permit Plaintiff to take ten (10) minute rest breaks for every four hours worked, or an uninterrupted thirty (30) minute meal break during shifts lasting longer than five (5) hours. However, based on the nature of her job duties and initial annual salary of $45,000.00 per year, Plaintiff should have been classified as a non-exempt hourly employee. Plaintiff was therefore entitled to overtime wages and meal and rest breaks, as required by California law.

26. Moreover, Defendants failed to reimburse Plaintiff for business expenses accrued from having to use her personal vehicle and cell phone to perform her job duties.

27. In addition, despite being put on notice by three different payroll companies that wages were not being timely paid, Defendants were habitually late in issuing Plaintiff her wages – which did not include overtime wages, meal and rest break premiums, reimbursement for business expenses, and penalties for late payment as required by law. For the vast majority of her employment, Defendants did not pay Plaintiff bi-weekly and instead issued her monthly checks. Defendants also delayed payment of earned commission for months on end – if they paid her



SCHEIN LAW GROUP

commission at all.

28. In addition to the foregoing violations of law, Defendant denied Plaintiff her sick pay to which she was legally entitled, from on or about December 31, 2021, through January 7, 2022, when she contracted COVID-19. Instead, Defendants required her to forfeit her accrued vacation days, thus having her use her vacation time and refusing to pay her sick leave as required by law.

**B. <u>Defendants Created a Hostile and Discriminatory Environment</u>**

29. At all times, Plaintiff was an exemplary employee as evidenced by the fact that during her approximately three years of employment, she was given three raises and a bonus. Plaintiff was not subject to any discipline and was never criticized for her performance – until she formally complained of Defendants' unlawful conduct on or about July 28, 2023. Plaintiff's complaint stemmed from Mr. Farhi's inappropriate conduct and illegal harassment.

30. From the beginning of Ms. Fitzgerald's employment, Defendant Mr. Farhi created a sexually hostile work environment for Plaintiff by leering at her and making unwelcome and inappropriate sexual comments. Mr. Farhi's conduct included, but was not limited to:

- Mr. Farhi repeatedly looked at Plaintiff's body from head to toe, focusing on her breasts and buttocks. On numerous occasions, when Plaintiff was required to reach upward to put away tile samples, she witnessed Mr. Farhi staring at her buttocks. On other occasions, while working at her desk, Mr. Farhi would approach Plaintiff from behind and lean over her to stare at her breasts.
- Mr. Farhi also made inappropriate and suggestive comments about Ms. Fitzgerald's physical appearance to the effect of, "have you been working out… you look incredible… what have you been doing?"
- Mr. Farhi also made inappropriate and sexualized comments to Ms. Fitzgerald about the infidelity and marital conflict between Zellij Gallery partners and clients. Mr. Farhi even spent close to two hours holding Plaintiff as a captive audience and telling her about his views on cheating and open relationships. Mr. Farhi stated that men can have as many women as they want sexually, but that it was disgusting for women to have



SCHEIN LAW GROUP

multiple partners.

- Mr. Farhi called women who cheated "cunts" and often referred to a client's wife as a "cunt." Mr. Farhi blamed the client's wife for allowing her husband's affair to interfere with his business.
- Mr. Farhi even asked Plaintiff for her opinion about open sexual relationships, in a transparent and shameless attempt to gage her openness to having an open sexual relationship with him.
- Mr. Farhi also informed Ms. Fitzgerald of his sexual preferences and opinions about intimate relationships, all of which were offensive to and unwelcome by Plaintiff. Mr. Farhi stated that all men cheat, and that it is in fact their prerogative to do so, and he therefore does not believe in monogamy. Mr. Farhi stated that all women should essentially "get with the program" and accept his unilateral polygamous beliefs.
- Mr. Farhi told Ms. Fitzgerald that he financially "takes care" of all of the women with whom he had ongoing sexual relations. On numerous occasions, Mr. Farhi insinuated that if Ms. Fitzgerald agreed to sleep with him, he would also "take care" of her financially.
- After learning that Ms. Fitzgerald had gone through a breakup in or around June 2022, Mr. Farhi repeatedly stated to Ms. Fitzgerald that he was "here for [Ms. Fitzgerald]….would like to care of [Ms. Fitzgerald]… would pay [P Ms. Fitzgerald's] bills," or words to that effect. For example, on a Friday at approximately 4:00 p.m. or 4:40 p.m., Mr. Farhi attempted to convince Ms. Fitzgerald to have drinks and dinner with him after work. Ms. Fitzgerald politely declined. However, Mr. Farhi continued to ask her out, peppering his requests with his desire to financially "take care" of her.
- Mr. Farhi also shared inappropriate comments about other women he had encountered with Ms. Fitzgerald. For example, on one occasion, Mr. Farhi told Ms. Fitzgerald that he had joined a yoga class for the primary purpose of watching women in the "child's pose."
- Mr. Farhi additionally disclosed each of the female clients with whom he had engaged

SCHEIN LAW GROUP

in sexual relations, even calling one of the female clients a "hoe," or words to that effect.

- When attractive female clients came into the showroom, Mr. Farhi would personally attend to them while leering at their breasts, cleavage, and buttocks.

When Ms. Fitzgerald opposed Mr. Farhi's harassing conduct, he refused to cease his behavior.

31. In addition, Mr. Farhi showed himself to be a brazen misogynist and deeply sexist by singling out Ms. Fitzgerald – his only female employee – by treating her less favorably than the other male employees. For example, Mr. Farhi consistently made blatantly derogatory and humiliating jokes about Ms. Fitzgerald's sex and/or gender. Additionally, on no less than twenty-five occasions, Mr. Farhi suggested that Plaintiff was "hormonal" and must be "having her period", when addressing any of Ms. Fitzgerald's behavior that he found disagreeable. Mr. Farhi specifically made statements to the effect of: "You must be on the rag today," "You're obviously PMS'ing," "You're so hormonal," and "Is it that time of the month?" In contrast, although Mr. Farhi openly expressed frustration with the performance and attendance of a male a warehouse employee, Mr. Farhi minimized his mistakes and required Ms. Fitzgerald to fix his errors for him.

32. Moreover, Mr. Farhi assigned Plaintiff extremely menial tasks, while referring to her as "you women."

C. **<u>Defendants Violated Wage and Hour Laws</u>**

33. On or about June 2, 2022, after Ms. Fitzgerald had been asking for the past six months for a copy of or access to her paystubs, Mr. Farhi refused and sent her an email with a list of check dates and dollar amounts for the period of August 27, 2021, through June 1, 2022. Ms. Fitzgerald was not provided with any record of pay from January 4, 2021, through August 26, 2021. Despite Ms. Fitzgerald's complaints, Mr. Farhi refused to provide her pay records as required under California law.

34. From in or about June 21, 2022, through July 1, 2022, Ms. Fitzgerald contracted COVID and had to miss a big work event she had been assigned to coordinate, set up, and attend. Even though Ms. Fitzgerald was sick, entitled to not work and use her earned sick days, Mr. Farhi delivered two large boxes of work to Ms. Fitzgerald' home, along with her work computer, to require her to work remotely while she was sick. Additionally, even though he knew that Ms.

SCHEIN LAW GROUP

Fitzgerald was sick, and he knew that he had required her to perform work while sick, Mr. Farhi deducted Ms. Fitzgerald's earned vacation days for this time period.

35. Starting on or about August 28, 2022, Mr. Farhi started misdating commission checks labeling the commission checks for the same month as Ms. Fitzgerald's monthly salary wages, when in fact the commissions were earned and due months earlier. Despite Ms. Fitzgerald's complaints, Mr. Farhi refused to correct the misrepresentations and intentionally incorrect pay dates.

36. Before the Labor Day holiday in 2022, Ms. Fitzgerald received (as she had previously) an email reminder from Defendants' payroll provider, Paychex, for Mr. Farhi to submit payroll in order for the employees to be paid on time. Ms. Fitzgerald asked Mr. Farhi to process payroll on time and take the notification seriously because she, and his other employees, needed their wages paid on time. Mr. Farhi responded to Ms. Fitzgerald with words to the effect, "No problem, it's being taken care of." Ms. Fitzgerald then contacted the bank on or about September 4, 2022, before the bank closed for Labor Day, and was informed that no more automatic deposits would come through before the holiday. Ms. Fitzgerald then had to contact Mr. Farhi the same day and beg him to process a manual deposit so that her rent check would not bounce, which was extremely stressful for Ms. Fitzgerald. Still, Ms. Fitzgerald's actual paycheck was not issued until September 7, 2022.

37. Starting in late September 2022, Mr. Farhi processed client checks that had been received months prior, and which he claimed that he had lost. As a result, Mr. Farhi significantly delayed the payment of Ms. Fitzgerald's commissions – if he paid them at all.

**D. <u>Mr. Farhi Instructed Ms. Fitzgerald to Engage in Unlawful Business Practices</u>**

38. On October 7, 2022, Mr. Farhi instructed Ms. Fitzgerald to locate the credit card of a female client, who he referred to as a "cunt." He told Ms. Fitzgerald to charge her credit card for unreturned boards, despite the client expressly informing the business that she would be returning the boards and asking them not to charge her credit card. Mr. Farhi dismissed Ms. Fitzgerald's repeated opposition to what she believed was an unlawful business practice and theft.

SCHEIN LAW GROUP

**E. Ms. Farhi Threatened Ms. Fitzgerald's Job if she Reported for Jury Duty**

39. On or about December 2, 2022, Ms. Fitzgerald was supposed to report for jury duty, but Mr. Farhi told her that she needed to find a way to get out of it because he had a trip planned to Morocco. Mr. Farhi intimidated Ms. Fitzgerald into trying to be excused from jury duty in order to keep the showroom open while he was out of the country stating, words to the effect, that "If I cannot count on you while I am away, there is no need to employ you any longer." As such, Mr. Farhi threatened Ms. Fitzgerald's job and told her to work instead of attending jury duty.

**F. Ms. Fitzgerald Complained About Defendants' Tax Evasion**

40. In addition to his other illegal conduct, Ms. Fitzgerald witnessed and complained about Mr. Farhi keeping separate sets of books to evade taxes for Zellij Gallery. Beginning in or about March 1, 2023, Mr. Farhi began keeping two sets of accounting books in Quickbooks. Mr. Farhi directed Ms. Fitzgerald to run all orders shipped to addresses outside of Los Angeles through one set of books in the system, so that they were not charged sales tax. Prior to this, only tax-exempt clients and goods shipped out of California were not taxed. When Ms. Fitzgerald questioned this new set of books which she believed to be unlawful, Mr. Farhi became irate and instructed her to "just do it." Upon information and belief, the second set of books caused items which should have been taxed not to be treated as tax exempt.

41. In addition, Mr. Farhi held over client payments from January 2022 to process in March 2022 in the new system, causing commissions previously earned by Ms. Fitzgerald and due to her, to be delayed. Despite Ms. Fitzgerald's continued pleas to be paid on time, Mr. Farhi dismissed her requests and ignored her demands for Mr. Farhi to follow California labor laws.

**G. Ms. Fitzgerald Suffered Disability Discrimination**

42. From on or about June 18, 2023, through on or about June 23, 2023, Mr. Farhi had the showroom re-painted. When Ms. Fitzgerald returned to work in the showroom, which had poor ventilation and air flow, she informed Mr. Farhi that she was experiencing severe migraines from the paint fumes. Mr. Farhi told Ms. Fitzgerald to keep working and "just open the doors." Instead of accommodating her migraines and allowing Ms. Fitzgerald to work from home, Mr. Farhi suggested that she work for another employer. Indeed, a building neighbor, came by the showroom

SCHEIN LAW GROUP

mid-week and commented how strong the fumes were and how surprised she was that Ms. Fitzgerald continued to work in the showroom.

**H. <u>Defendants Refused to Comply with Health and Safety Laws</u>**

43. From in or about June 20, 2023, through July 29, 2023, due to the fresh paint, the bathroom door did not close all the way, so that it could not be locked and swung wide open unexpectedly. When Ms. Fitzgerald reported to Mr. Farhi of this, he promised to fix it right away. Mr. Farhi did not do as he promised. As such, during this approximately one-month period, when Ms. Fitzgerald used the restroom, she had to awkwardly use one foot to hold the door closed. One time the door swung wide open while Mr. Farhi was with a client in the showroom which was directly across from the restroom, humiliating Ms. Fitzgerald. Despite Ms. Fitzgerald's repeated reminders to fix the bathroom door, Mr. Farhi did not fix it until Ms. Fitzgerald formally complained to him that the labor laws required that restroom stalls have locks that worked.

44. From on or about July 17, 2023, through on or about July 21, 2023, the air conditioning in the showroom was not working which caused the temperature to be over 80 degrees. Mr. Farhi 's response was, to the effect, "I have worked here for 15 years in several conditions. The entire planet is hot and 82 degrees is not unbearable. I have so much on my plate and this is the last thing I want to deal with now…." Ms. Fitzgerald sent Mr. Farhi a screenshot from a Google search stating in California's indoor workplaces, employers are required to maintain a temperature between 68 and 78 degrees Fahrenheit, depending on the type of work being performed. When Ms. Fitzgerald called to inform Mr. Farhi that she was again experiencing a severe migraine because of the heat, Mr. Farhi again told her that, "If I cannot rely on you when I am away to keep the showroom open, then there is no need for you," or words to that effect. When Mr. Farhi returned to the office on July 21, 2023, and saw the air conditioner repair company replacing the air conditioning unit, Mr. Farhi became verbally abusive towards Ms. Fitzgerald stating he would never authorize the air conditioner to be fixed on a business day. Ms. Fitzgerald reminded Mr. Farhi that he scheduled the repair and texted her the day before to inform her that he would be coming. In response, Mr. Farhi sent Ms. Fitzgerald home for the day in a fit of rage.

**I. <u>Defendants Refused to Pay for Business Expenses</u>**

45. On or about July 27, 2023, at approximately 5:16 pm, Ms. Fitzgerald texted Mr. Farhi to inform him that she received a $58 parking ticket outside the showroom where she was instructed to park by Mr. Farhi upon her hire. Initially, Ms. Fitzgerald moved her car every two hours to avoid receiving a ticket which meant closing the showroom for 5-10 minutes while she moved her car, which were the only "breaks" she took during the workday. However, Mr. Farhi became angry at Ms. Fitzgerald for taking these "breaks" which required her to close the showroom to move her car. Then, Mr. Farhi ordered Ms. Fitzgerald to continue parking in the two-hour spot without moving her car, asserting that the two-hour limit was not enforced. Because Mr. Farhi refused to allow Ms. Fitzgerald to move her car, she understood that Defendants would pay for any parking ticket she might receive. However, when Ms. Fitzgerald informed Mr. Farhi that she had received a ticket, Mr. Farhi responded to her by text, denying that he told her to park in the two-hour parking area and informing her that he was not responsible for paying for Ms. Fitzgerald's parking tickets.

**J. <u>Ms. Fitzgerald Complains of Unlawful Conduct, and Defendants Retaliate</u>**

46. The next day, on or about July 28, 2023, Ms. Fitzgerald had enough of Mr. Farhi's gaslighting and unlawful conduct. Ms. Fitzgerald texted Mr. Farhi to complain that she rarely went to lunch, never took a rest break, and that Mr. Farhi had expressly instructed her not to close the showroom even for a few minutes to move her car every two hours. Mr. Farhi texted back,

**This is bullshit, I am coming now and we are going to talk about this.**

In their face-to-face meeting, Ms. Fitzgerald stated to Mr. Farhi that she was no longer going to tolerate his unlawful conduct, including his unwelcome sexual advances, his sexist comments, continued late and incomplete pay, denial of meal and rest breaks, refusal to allow her to use her incremental PTO, failure to correct unsafe work conditions, and violation of her privacy in the restroom by refusing to fix the lock. Ms. Fitzgerald also stated that she would no longer engage in his illegal business practices with clients.

47. Immediately after Ms. Fitzgerald formally opposed Defendants' unlawful practices, Mr. Farhi engaged in a two-week tirade of relentless retaliation towards Ms. Fitzgerald.



SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 23 Filed 06/19/26 Entered 06/19/26 17:30:16 Desc
Main Document Page 23 of 51

- Within twenty minutes of Ms. Fitzgerald's face-to-face meeting with Mr. Farhi, he terminated her access to Quickbooks – which is required for her to do the vast majority of her duties – without notifying Ms. Fitzgerald. Ms. Fitzgerald immediately emailed Mr. Farhi that same day stating that he was retaliating against her for her complaints and asking why he terminated her access to Quickbooks, which stripped her of the majority of her duties, to which Mr. Farhi responded hours later that he removed her Quickbooks duties due to an error she made, despite Ms. Fitzgerald's proof that she did not make any error. Because Ms. Fitzgerald no longer had access to Quickbooks, Ms. Fitzgerald was required to email Mr. Farhi requesting that he provide her with the data needed from Quickbooks to complete the tasks.
- Mr. Farhi instructed Ms. Fitzgerald to email him a detailed spreadsheet daily of all her activities, which she was never previously required to do, so that he could "monitor" her.
- Mr. Farhi also gave Ms. Fitzgerald work assignments designed to overload her and to get her to quit. Prior to their face-to-face meeting, there were weeks Ms. Fitzgerald did not see or speak to Mr. Farhi because he was entirely hands off on whatever she was working on. It was common for Ms. Fitzgerald to receive 60+ emails per day. After their meeting, Mr. Farhi required Ms. Fitzgerald to type a summary of each and every email and phone call made or received and detail it in a daily activities spreadsheet.
- Mr. Farhi also suddenly changed policies and accused Ms. Fitzgerald of violating them. For example, on the same day as their face-to-face meeting on July 28, 2023, Mr. Farhi immediately changed the shipping policy and claimed that Ms. Fitzgerald made a $400 error, despite the fact that the shipping arrangements were consistent with longstanding policy and approved by the client months earlier.

48. In addition, Mr. Farhi assigned Ms. Fitzgerald new nonsensical, menial "tasks" which were intended to make her quit. Ms. Fitzgerald arrived early and stayed late to keep up with the new and additional rote tasks he made her do. The new "tasks" included:

- Mr. Farhi instructed Ms. Fitzgerald to design a new window display with an assigned due



SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 23 Filed 06/15/26 Entered 06/15/26 17:00:16 Desc
Main Document Page 24 of 52

date. This was the first time Ms. Fitzgerald was ever given a due date.

- Mr. Farhi directed Ms. Fitzgerald to make sure that the slideshow of Zellij Gallery's products was displayed at all times. Prior to July 28, 2023, the slideshow played at all times with no issues, except for during occasional power outages. On the morning of July 31, 2023, Mr. Farhi arrived at the showroom prior to Ms. Fitzgerald. When Ms. Fitzgerald arrived, the slideshow was off. Mr. Farhi reiterated his directive to Ms. Fitzgerald in a stern voice that it was her responsibility that the slideshow be on at ALL times. Ms. Fitzgerald immediately turned on the slideshow in front of him. Later that day, when Ms. Fitzgerald returned from the restroom, Mr. Farhi informed her that the slideshow was off again. Per his request, she again turned on the slideshow. When the slideshow went off for a third time, Mr. Farhi erupted in anger. Ms. Fitzgerald told him that she did not touch it and suggested the possibility it was on a timer set to turn the TV off. When Ms. Fitzgerald asked if he had the TV manual and was familiar with the timer settings, Mr. Farhi was dismissive of her. The TV that displayed the slideshow was located directly behind Ms. Fitzgerald's desk, making it unnoticeable to her, unless she stopped working and turned around. Ms. Fitzgerald came up with the solution that she would set a timer on her phone to check the slideshow four times per day at a specific time. Ms. Fitzgerald e-mailed Mr. Farhi to let him know the plan, and the slideshow mysteriously never turned off again. Upon information and belief, Mr. Farhi was intentionally turning off the slide show in a childish effort to harass Ms. Fitzgerald and to manufacture reasons to criticize her.
- The showroom had three lights switches: One was on a timer, one Ms. Fitzgerald turned on and off each day, and the third was not used. On or about August 7, 2023, Mr. Farhi told Ms. Fitzgerald he had replaced the bulbs on the third fixture and that she must make sure to turn them on when she arrives and then turn them off when she leaves. Ms. Fitzgerald set a timer on her phone to remind her because Mr. Farhi emphasized the importance of this directive. The following morning, August 8, 2023, Ms. Fitzgerald went to turn the lights on the third fixture and the lights did not go on. Ms. Fitzgerald recorded a video of her attempting to turn the lights and showing that they would not go on and immediately

SCHEIN LAW GROUP

emailed it to Mr. Farhi to show him that she tried to follow through with his instruction, but the lights were not working. Mr. Farhi never responded.

49. Mr. Farhi also made it more difficult for Ms. Fitzgerald to perform her job duties. For example, on July 31, 2023, Ms. Fitzgerald's Bluetooth apple mouse alerted her to a low battery alert, so she made sure to plug it in to charge overnight. When Ms. Fitzgerald left the showroom on July 31, 2023, Mr. Farhi was still there (and the only person there). The next morning, when Ms. Fitzgerald arrived at work, the mouse was unplugged, which had never happened before. Without a working mouse, Ms. Fitzgerald could not perform most of her daily duties. On information and belief, Mr. Farhi unplugged the charging cord as part of his attempt to either make Ms. Fitzgerald quit or to terminate her if she did not complete her tasks.

50. Mr. Farhi also suddenly started blaming Ms. Fitzgerald for errors that could not have been attributable to her. For example, on or about August 1, 2023, Ms. Fitzgerald emailed Mr. Farhi stating, "You revoked my access to quickbooks on Friday 7/28/23 and you're blaming me for something that happened in quickbooks on Monday 7/31/23. … how could I have moved a packing slip on 7/31/23 when I didn't have access to quickbooks on 7/31/23 to download the packing slip?" Mr. Farhi again did not respond.

51. Because Ms. Fitzgerald could not complete her tasks without information from Quickbooks, Ms. Fitzgerald was required to repeatedly email Mr. Farhi to obtain Quickbooks information to complete do her job, to which Mr. Farhi did not immediately respond, delaying completion. For example, Ms. Fitzgerald emailed Mr. Farhi, on August 1, 2023, "per our conversation at 2:12 pm today, I'm reminding you to please email me the contact name and number re invoice 183416. I don't have access to quickbooks to look it up myself and I would like to complete your request in a timely manner." Mr. Farhi did not respond. Exasperated at the end of the day, Ms. Fitzgerald wrote: "I've made the updates requested such as providing more detailed information re: each client interaction [in the daily activities report]. After much thought I have decided I don't feel comfortable omitting the tasks I perform for you from my activities report as you asked. I feel that because you explained the reason for the report was to monitor my activities and most of my time is taken up responding to your emails it is only right to include them."

SCHEIN LAW GROUP

52. On or about August 2, 2023, Ms. Fitzgerald noticed in the Paychex payroll system a change of payroll dates from monthly pay to semi-monthly and changing her classification from salary to hourly. The next day, Ms. Fitzgerald asked Mr. Farhi if she could take her lunch at 2:00 p.m. instead of 1:00 p.m., as he recently directed her to do after July 28, 2023. Mr. Farhi responded that she is a salaried employee and can take her breaks anytime she wanted, thus contradicting the Paychex change in her pay classification.

**K. <u>Ms. Fitzgerald Complains to Human Resources, and is Immediately Fired</u>**

53. On or about August 9, 2023, Ms. Fitzgerald received an email at 9:00 a.m. from Monika Gransee, who stated that she was the new Human Resources consultant for Zellij Gallery and "will be working with Mr. Farhi to ensure that our team experiences a smooth transition as we implement some important changes." The email indicated a "positive" change in the payroll schedule to bi-weekly pay and attached a new Employee Handbook "to ensure a harmonious and productive work environment," posters and notices, which gave notice of policies which were, in fact, the opposite of Defendants' actual practices. Upon information and belief, the required notices were not posted at any time during Ms. Fitzgerald's employment.

54. The Employee Handbook included an Equal Employment Opportunity ("EEO") and anti-discrimination and harassment policies that promised to investigate any reported complaints, no retaliation for reporting complaints, and remedial action would be taken against violators. While the meal and rest break policies detailed California law (none of which Defendants had been following through the course of Ms. Fitzgerald's employment) the new policy emphasized prioritizing clients over breaks. The Handbook also included policies on PTO, use of sick pay, and parking that were inconsistent with Defendants' practices.

55. Ms. Fitzgerald was hopeful that the HR consultant had been hired in response to her repeated complaints of workplace harassment and illegal labor practices. Later that same day, Ms. Fitzgerald emailed Ms. Gransee:

> I have to ask if you were hired to address the complaints I've had to make to Mr. Farhi? Please let me know. I don't know if you're aware, but **I've been complaining about a lot of issues with not being paid my wages and having to**



SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 23 Filed 06/15/26 Entered 06/15/26 17:56:16 Desc
Main Document Page 27 of 52

**deal with a harassing and unsafe work env for a long time**. This came to a head on 7/28/23 when I insisted that Mr. Farhi stop his unlawful treatment of me. Ever since then, it has only gotten worse. I've had my duties taken away and I've been assigned to new lower level tasks. I feel like I'm being pushed out and I need it to stop. (Emphasis added).

56. Ms. Gransee replied later that evening, "I was not aware of any allegations against Mr. Farhi. I was hired as a consultant to assist with implementation of bus policies and HR policies and I am acting in this capacity."

57. The very next day on or about August 10, 2023, at approximately 10:00 a.m. – less than half-day after Ms. Fitzgerald last raised her unlawful complaints against Mr. Farhi – Mr. Farhi entered the showroom with a fully-armed West Hollywood Sheriff and stated, "Everly you are terminated, effective immediately. The Sheriff is here to escort you out. You will receive your final check today via direct deposit. Here's a box, collect your things," or words to that effect. Ms. Fitzgerald responded, to the effect, "Ok. Can you tell me why I am being terminated?" Mr. Farhi said something along the lines of, "Not right now." Ms. Fitzgerald asked if she could email him a recap of their encounter, stating he terminated her today and declined to explain why. Mr. Farhi, acquiesced. However, as soon as Ms. Fitzgerald sat down at the computer to do so, Mr. Farhi became hostile, and aggressive, and ordered Ms. Fitzgerald not to use the computer. He then stormed up to Ms. Fitzgerald and physically ripped the power cord out of the wall and/or computer. The exchange was recorded on Sheriff Essandoh's body camera.

58. Ms. Fitzgerald was then escorted out of the building in front of business colleagues who work at neighboring offices. The entire experience was intended to be, and was, humiliating and insulting. After Ms. Fitzgerald was walked outside from the back of the building to the front of the building, at least three separate colleagues approached Ms. Fitzgerald to ask what was happening. Ms. Fitzgerald was in shock and deeply embarrassed.

**L. <u>Ms. Fitzgerald was Damaged by Defendants' Illegal Conduct</u>**

59. At the time of her wrongful termination, Mr. Farhi intentionally withheld Ms. Fitzgerald's final wages. Ms. Fitzgerald did not receive her final paycheck until August 11, 2023,



SCHEIN LAW GROUP

which was a day late and grossly inaccurate. Defendants did not pay all compensation due and owing to Ms. Fitzgerald. Defendants did not correct the previous unlawful deductions of her vacation pay or sick pay previously owed. Defendants did not pay all earned and owed overtime, unreimbursed business expenses, meal and rest break premium pay, unpaid and earned commissions, and other wage and hour penalties owed.

60. Two days later, on or about August 13, 2023, Ms. Fitzgerald was hospitalized for a life-threatening condition, and underwent emergency surgery. Upon information and belief, Ms. Fitzgerald's condition was caused by the stress of the unlawful conduct by Defendants.

61. As a consequence of Defendants' conduct, Plaintiff has suffered and continues to suffer harm, including lost past and future income and employment benefits, damage to her reputation, lost wages, overtime, meal and rest break premiums, unpaid and earned commissions, penalties, unreimbursed business expenses, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

62. As a consequence of Defendants' conduct, Plaintiff has suffered and continues to suffer physical damages, including, gastrointestinal issues, psychological and emotional distress, panic attacks, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

63. At the time of the filing of this Complaint, Plaintiff is owed wages from Defendants. Defendants failed to pay those wages in accordance with California *Labor Code* § 200, *et. seq*.

64. Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by taking other adverse job actions against Plaintiff because of her gender, disability, and/or good faith complaints, and/or (b) Defendants' conduct was despicable and committed in willful and conscious disregard of Plaintiff's rights, health, and safety, including Plaintiff's rights to be free of discrimination, harassment, retaliation, unsafe and unhealthy work environment, and wage and hour violations.

65. In addition, Defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that Defendants' actions against Plaintiff

SCHEIN LAW GROUP

because of her gender, disability, and/or good faith complaints, were "despicable" and subjected Plaintiff to cruel and unjust hardship, in knowing disregard of Plaintiff's rights to a workplace free of harassment, discrimination, retaliation, unsafe and unhealthy work environment, and wage and hour violations.

66. In addition, Defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that Defendants asserted false (pretextual) grounds for adverse job actions, thereby causing Plaintiff hardship and deprive her of legal rights.

67. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

68. Prior to filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the California Civil Rights Department and receiving a right-to-sue letter.

**<u>FIRST CAUSE OF ACTION</u>**

**Harassment on the Basis of Sex and Gender**

**in Violation of Cal. Gov't Code § 12940(j)**

**(Against All Defendants, and DOES 1 to 10)**

69. Plaintiff incorporates the paragraphs above as though fully set forth herein.

70. At all times herein mentioned, the California Fair Employment and Housing Act ("FEHA"), Government Code section 12940, *et seq.,* was in full force and effect and was binding on Defendants employed five or more persons. This statute requires Defendants to refrain from sexually harassing their employees which creates a sexually hostile work environment. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

71. As identified herein, during Plaintiff's employment with Defendants, Defendants engaged in actions that constituted sexual harassment of Plaintiff and failed to take action against Mr. Farhi who sexually harassed Plaintiff because she is a woman/female. These actions created a hostile working environment for Plaintiff on the basis of her sex and gender.

72. All of these actions were severe and pervasive, and taken against Plaintiff's consent, will, and desires.



SCHEIN LAW GROUP

SCHEIN LAW GROUP

73. A reasonable woman and/or female in Plaintiff's circumstances would have considered the work environment created by Defendants to be hostile, intimidating, offensive, oppressive, and/or abusive – as Plaintiff considered it to be.

74. As a proximate result of Defendants' willful, knowing, and intentional creation of a hostile work environment, Plaintiff has sustained and continue to sustain damages, including losses of earnings and benefits, according to proof.

75. As a proximate result of Defendants' willful, knowing, and intentional creation of a hostile work environment, Plaintiff has suffered and continue to suffer physical damages, including, gastrointestinal issues, panic attacks, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

76. Defendants' creation of a hostile work environment was done intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

77. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are known.

## SECOND CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**In Violation of Cal. Gov't Code § 12940(a)**

**(Against Defendants Zellij Gallery, and Does-10)**

78. Plaintiff incorporates the paragraphs above as though fully set forth herein.

79. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on Defendant Zellij Gallery who employed five or more persons. This statute requires Defendants to refrain from discriminating against any employee because of her sex or gender. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

80. During Plaintiff's employment with Defendants, Mr. Farhi engaged in actions that have had a negative impact on the treatment of women intentionally engaging in sex/gender

discrimination against Plaintiff, the only female at Zellij Gallery. Mr. Farhi provided unequal work/assignments, harassed, retaliated against, and took other adverse job actions and disparate treatment against Plaintiff because she is a woman and female.

81. Plaintiff is a qualified employee and was and is a member of a protected class.

82. Defendants, through their CEO, CFO, Secretary, Director and manager, exhibited sexist and misogynist motivations, intentions, and consciousness. Plaintiff believes and, on that basis, alleges that Defendants' real motivation was to treat her differently and take adverse employment actions against her because of her sex and/or gender.

83. On the basis of the above, Plaintiff believes and alleges that her gender was a substantial motivating reason in Defendants' adverse employment actions against her.

84. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

85. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

86. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

87. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

///

///

///



SCHEIN LAW GROUP

**THIRD CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activities**

**In violation of Cal. Gov't Code § 12940(h)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

88. Plaintiff incorporates the paragraphs above as though fully set forth herein.

89. At all relevant times, Defendant Zellij Gallery regularly employed five or more persons.

90. Plaintiff made numerous complaints throughout the course of her employment to Defendants regarding (1) discriminatory and harassing conduct directed at herself and other women; (2) unsafe working conditions; (3) improper payroll practices; and (4) illegal business practices.

91. Plaintiff's complaints to Defendants about sexual harassment, discrimination based on gender, disability, and/or other characteristics protected by FEHA, Government Code section 12900, et seq., and about illegal practices, were substantial motivating factors in Defendants' decision to retaliate and take other adverse job actions against Plaintiff.

92. On the basis of the above, Plaintiff believes and alleges that Defendants retaliated against her for her complaints.

93. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

94. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

95. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

96. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable



SCHEIN LAW GROUP

attorneys' fees and costs (including expert costs) in an amount according to proof.

**<u>FOURTH CAUSE OF ACTION</u>**

**Discrimination on the basis of Disability and/or Medical Condition**

**In violation of Cal. Gov't Code § 12940(a)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

97. Plaintiff incorporates the paragraphs above as though fully set forth herein.

98. At all times herein mentioned, FEHA, Government Code section 12940, et seq., was in full force and effect and was binding on Defendant Zellij Gallery who regularly employed five or more persons. This statute requires Defendants to refrain from discriminating against any employee because of an actual or perceived disability and/or medical condition. Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.

99. During Plaintiff's employment with Defendants, Defendants, through their supervisor, engaged in actions that had a negative impact on the treatment of persons who are disabled or perceived to be disabled. During Plaintiff's employment with Defendants, Defendants intentionally engaged in discrimination on the basis of disability and/or medical condition by harassing, discriminating against, taking adverse job actions against, and discharging persons who are disabled or perceived to be disabled with greater frequency than other employees.

100. Plaintiff was a qualified employee at the time of the termination of their employment and was a member of a protected class due to her actual and perceived disabilities and/or medical conditions. Plaintiff's actual and perceived disabilities and/or medical conditions (severe migraines) limited multiple major life activities. Plaintiff was able to perform her essential job duties, with reasonable accommodations.

101. Defendants, through their manager and supervisor, exhibited discriminatory motivations, intentions, and consciousness; Mr. Farhi threatened Plaintiff two times to find a new employer for her migraines. Plaintiff believes and, on that basis, alleges that Defendants' real motivation was to discharge her because of her protected status.



SCHEIN LAW GROUP

102. On the basis of the above, Plaintiff believes and alleges that her actual and perceived disabilities and/or medical conditions were a substantial motivating reason in Defendants' adverse employment actions, against Plaintiff because of her disability and/or medical condition.

103. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

105. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

106. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

## FIFTH CAUSE OF ACTION

**Failure to Accommodate and Failure to Engage in the Interactive Process**

**In Violation of Cal. Gov't Code §§ 12940(m)-(n)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

107. Plaintiff incorporates the paragraphs above as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, et seq., was in full force and effect and was binding on Zellij Gallery who regularly employed five or more persons and required Defendants to refrain from discriminating against any employee on the basis of a disability (including actual, perceived, history of, etc.). Within the time provided by law, Plaintiff filed a complaint with the CCRD, in full compliance with administrative requirements, and received a right-to-sue letter.



SCHEIN LAW GROUP

109. Plaintiff was a qualified employee at the time of the failure to accommodate, and failure to engage in the interactive process, and termination of her employment, she performed her jobs in an exemplary manner, and recently had experienced actual and perceived disabilities and/or medical conditions – severe migraines – which required reasonable accommodations. Defendants refused to engage in the interactive process, refused to allow her to work from home, refused to allow her to take sick or disability leave, and refused to accommodate Plaintiff. Defendants intentionally discriminated against Plaintiff in violation of the law.

110. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodations could be made so that she would be able to perform the essential job requirements.

111. Defendants failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodations could be made, and instead, Mr. Farhi told her to find a new employer, and soon after terminated Plaintiff.

112. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

113. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

114. Defendants' discrimination was done intentionally, in a malicious, oppressive manner, entitling Plaintiff to punitive damages.

115. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

///

///



SCHEIN LAW GROUP

## SIXTH CAUSE OF ACTION

**Failure to Prevent Harassment, Discrimination, and Retaliation**

**In Violation of Cal. Gov't Code § 12940(k)**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

116. Plaintiff incorporates the paragraphs above as though fully set forth herein.

117. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on Defendant Zellij Gallery. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent harassment, discrimination and retaliation from occurring." Prior to filing the instant Complaint, Plaintiff filed a timely administrative charge and received a right-to-sue letter.

118. During the course of Plaintiff's employment, Defendants failed to prevent Mr. Farhi from engaging in intentional actions that resulted in Plaintiff being sexually harassed and treated less favorably because of Plaintiff's protected status (i.e., gender/sex, disability/medical condition, and/or complaints). During the course of Plaintiff's employment, Defendants failed to prevent Mr. Farhi from engaging in unjustified employment practices against employees in such protected classes.

119. Plaintiff believes, and on that basis alleges, that her gender/sex, disability/medical condition, complaints, and/or other protected statuses or protected activities were substantial motivating factors in Defendants employees' mistreatment of her.

120. As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiff has sustained and continue to sustain substantial losses of earnings and other employment benefits.

121. As a proximate result of Defendants' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.



SCHEIN LAW GROUP

122. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

123. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

**SEVENTH CAUSE OF ACTION**

**Wrongful Termination in Violation of Public Policy**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

124. Plaintiff incorporates the paragraphs above as though fully set forth herein.

125. Defendants wrongfully terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, Plaintiff's employment was wrongfully terminated in part because of her protected statuses and/or good faith complaints. These actions were in violation of FEHA, the California Constitution, and California Labor Code.

126. As a proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

127. As a proximate result of Defendants' wrongful termination of Plaintiff's employment in violation of fundamental public policies, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

128. As a result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered general and special damages in sums according to proof.

129. Defendants' wrongful termination of Plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

130. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.



SCHEIN LAW GROUP

SCHEIN LAW GROUP

**EIGHTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against All Defendants and DOES 1 to 100)**

131. Plaintiff incorporates the paragraphs above as though fully set forth herein.

132. Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress. The conduct set forth above caused Plaintiff to suffer debilitating emotional distress, which also manifested in physical symptoms and led to emergency surgical intervention.

133. Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, and harassing Plaintiff, would devastate Plaintiff and cause her extreme hardship.

134. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

135. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

136. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

**NINTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code § 1102.5**

**(Against Defendants Zellij Gallery, and DOES 1 to 10)**

137. Plaintiff incorporates the paragraphs above as though fully set forth herein.

138. At all relevant times, Labor Code section 1102.5 was in effect and was binding on Defendants. This statute prohibits Defendants from retaliating against any employee, including Plaintiff, for raising complaints of illegality.

139. Plaintiff raised complaints of illegality while she worked for Defendants to Defendants, including, but not limited to, unlawful harassment, discrimination, wage and hour violations, not allowing her to attend jury duty, unsafe working conditions, failure to pay wages, and illegal business practices.

140. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

141. As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

142. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

143. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

144. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

SCHEIN LAW GROUP

**<u>TENTH CAUSE OF ACTION</u>**

**Retaliation in Violation of Labor Code § 6310 et. seq.**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1 to 10)**

145. Plaintiff incorporates the paragraphs above as though fully set forth herein.

146. Plaintiff is an employee of Defendants and actions taken against her were by Mr. Farhi, acting on behalf of Defendants.

147. California Labor Code § 6310 prohibits discrimination or retaliation in the terms and conditions of employment against an employee for complaining about unsafe or unhealthy working conditions or practices.

148. Plaintiff raised complaints during her employment with Defendants to Defendants of unsafe and unhealthy working conditions and practices.

Case 2:26-bk-12374-WB Doc 23 Filed 06/15/26 Entered 06/15/26 17:00:16 Desc
Main Document Page 40 of 52

149. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

150. As a proximate result of Defendants willful, knowing, and intentional violations of Labor Code section 6310, Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

151. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

152. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

153. Plaintiff has incurred and continue to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

**ELEVENTH CAUSE OF ACTION**

**Retaliation in Violation of Labor Code § 98.6, et. Seq.**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1 to 10)**

154. Plaintiff incorporates the paragraphs above as though fully set forth herein.

155. At all relevant times, Labor Code section 98.6 was in effect and was binding on Defendants. This statute prohibits Defendants from retaliating against any employee, including Plaintiff, for raising wage and hour complaints.

156. Plaintiff repeatedly raised complaints of violations of wage and hour laws during her employment with Defendants to Defendants.

157. Defendants retaliated against Plaintiff by discriminating against her, harassing her, and taking adverse employment actions against her, as set forth above.

158. As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code section 98.6., Plaintiff has suffered and continues to suffer physical and emotional damages, including, gastrointestinal medical issues, panic attacks, anxiety, humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.



SCHEIN LAW GROUP

159. As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

160. As a result of Defendants' violation of Labor Code section 98.6, Plaintiff is entitled to civil penalties for each violation of this section.

161. Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages against Defendants.

162. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

163. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**<u>TWELFTH CAUSE OF ACTION</u>**

**Failure to Pay All Compensation Due and**

**Owing to Plaintiff and Late Payment of Wages**

**(Labor Code Sections 204 and 210)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

164. Plaintiff incorporates the paragraphs above as though fully set forth herein.

165. California Labor Code §§ 204(a) and 210 require Defendants to pay all wages due and owing to Plaintiff, a non-exempt employee, during her employment twice a month and may not collect or receive any portion of an employee's wages. The amount of wages owed to Plaintiff will be stated according to proof at trial.

166. Defendants willfully failed to pay Plaintiff all wages due and owing to her during employment as to actual hours worked, sick pay, meal and rest break premiums, and commissions earned as required by the California Labor Code. Defendants are also liable to Plaintiff for penalties



SCHEIN LAW GROUP

arising from the repeated late paid wages in the amount of $100 for the first violation and $200 for each subsequent violation. In addition, Defendants also must pay 25% of the wages that were paid late.

167. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**THIRTEENTH CAUSE OF ACTION**

**Failure to Pay Overtime Wages**

**(Labor Code Sections 510 and 558)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

168. Plaintiff incorporates the paragraphs above as though fully set forth herein.

169. California Labor Code Sections 510 and 558 entitle non-exempt employees to overtime premiums for hours worked in excess of eight (8) hours in a given workday or forty (40) hours in a given workweek, or on the seventh day worked in a single workweek. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation.

170. Plaintiff was misclassified as salaried, exempt employee, and she worked in excess of eight hours in a workday and/or in excess of forty hours in a workweek, without proper overtime compensation. Defendants unlawfully failed to pay Plaintiff the proper overtime compensation.

171. As a result of Defendants' conduct, Plaintiff is entitled to unpaid overtime wages, interest, attorneys' fees and costs.

172. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based

SCHEIN LAW GROUP

on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**FOURTEENTH CAUSE OF ACTION**

**Failure to Pay Minimum Wages**

**(Labor Code Sections 1194, 1197, 1197.1)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

173. Plaintiff incorporates the paragraphs above as though fully set forth herein.

174. California Labor Code Sections 1194, 1197, 1197.2 entitle non-exempt employees to an amount equal to or greater than the minimum wage for all hours worked. All hours must be paid at the statutory or agreed rate and no part of this rate of pay may be used as a credit against a minimum wage obligation.

175. Defendants did not compensate Plaintiff for all hours worked in compliance with California and West Hollywood's Ordinance.

176. As a result of Defendants' conduct, Defendants are liable for unpaid minimum wages, liquidated damages, attorneys' fees and costs.

177. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

///

///

///



SCHEIN LAW GROUP

## FIFTEENTH CAUSE OF ACTION

**Failure to Provide Meal Periods**

**(Labor Code Sections 226.7, 512(a), 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi and DOES 1-10)**

178. At all relevant times herein set forth, the applicable IWC Wage Order(s) and California Labor Code sections 226.7, 512(a) and 1198 were applicable to Plaintiff's employment by Defendants.

179. At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer, and any individual on behalf of an employer, may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041-1042.

180. At all relevant times herein set forth, California Labor Code section 226.7 and 512(a) provide that no employer, and any individual on behalf of an employer, shall require an employee to work during any meal period mandated by an applicable order of the IWC.

181. At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers, and any individual on behalf of an employer, to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

182. As stated, Defendants' company-wide failure to schedule meal periods and failure to provide adequate meal break coverage prevented Plaintiff from taking compliant meal periods. As a result of this practice and/or policy, Plaintiff was frequently required to continue to perform

SCHEIN LAW GROUP

their duties, such as tending to clients, without being able to take a timely, compliant meal period. Additionally, Defendants discouraged and impeded Plaintiff from taking compliant breaks by requiring her to stay in the showroom all day, without providing her with meal break coverage.

183. Plaintiff did not sign valid meal break waivers on days that she was entitled to meal periods and was not relieved of all duties.

184. As a result, Plaintiff had to work through part or all of their meal periods, have her meal periods interrupted, and/or wait extended periods of time before taking meal periods. For example, Plaintiff was sometimes made to work over five (5) hours straight before Defendants permitted and authorized her to take their meal periods. Many of Plaintiff' meal periods that she did take were late (after they had already worked five (5) hours or more into his shift) or not at all.

185. At all times herein mentioned, Defendants knew or should have known that as a result of these policies, Plaintiff was prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods and that Defendants did not pay Plaintiff's meal period premium wages when she was late, short, and/or interrupted.

186. Defendants 's conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198.

187. As a result of Defendants' conduct as alleged herein, Plaintiff has been required to retain counsel to represent them. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial. *Betancourt v. OS Restaurant Services, LLC*, Case No. B293624 (Cal. Ct. App. 9/12/22); *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93.

///

///

///

SCHEIN LAW GROUP

**<u>SIXTEENTH CAUSE OF ACTION</u>**

**Failure to Provide Rest Periods**

**(Labor Code Sections 226.7 and 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

188. Plaintiff incorporates the paragraphs above as though fully set forth herein.

189. At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 and 1198 were applicable to Plaintiff's employment by Defendants.

190. At all relevant times, the applicable IWC Wage Order provides that "[e]very employer and any individual on behalf of an employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

191. At all relevant times, California Labor Code section 226.7 provides that no employer and any individual on behalf of an employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff were entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each workday that a required rest period was not provided.

192. During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff to take ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, Defendants similarly failed to schedule rest periods for Plaintiff on a company-wide basis. Defendants 's management would request that employees refrain from taking rest breaks in order to provide service to clients. As a result, Plaintiff would sometimes work in excess of three and one-half (3½) hours and in excess of six (6) hours without receiving all uninterrupted ten (10) minute rest periods to which they were entitled.

193. Upon information and belief, Defendants engaged in conduct that prevented Plaintiff from being relieved of all duty in order to take compliant rest periods, requiring her to

SCHEIN LAW GROUP

work during rest periods. At the same time, Defendants implemented a systematic, company-wide policy to not pay rest period premiums.

194. As a result, Plaintiff was denied rest periods and failed to pay the full rest period premiums due, in violation of Labor Code sections 226.7, 1198, and the applicable IWC Wage Order.

195. As a result of Defendants' conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial. *Betancourt v. OS Restaurant Services, LLC*, Case No. B293624 (Cal. Ct. App. 9/12/22); *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93.

## SEVENTEENTH CAUSE OF ACTION

**Failure to Reimburse Necessary Business Expenses**

**(Labor Code Section 2802)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

196. Plaintiff incorporates the paragraphs above as though fully set forth herein.

197. At all relevant times, Labor Code Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

198. Plaintiff incurred reasonable and necessary expenses in the course of completing her job duties which were not reimbursed by Defendants. These expenses include, but are not limited to, monthly cellular phone, voice and data plan, parking ticket, and mileage for trips related to her work for Zellij Gallery.

199. Plaintiff is entitled to reimbursement for those necessary expenditures, plus interest and attorneys' fees and costs under Labor Code Section 2802.

SCHEIN LAW GROUP

200. As a result of Defendants conduct as alleged herein, Plaintiff has been required to retain counsel to represent her. Plaintiff will continue to incur attorneys' fees and costs in an amount within the jurisdictional limits of this Court. Plaintiff is therefore entitled to an award based on the reasonable attorneys' fees necessarily incurred in the preparation and prosecution of this action, pursuant to *Labor Code* section 218.5(a), which amount will be stated according to proof at trial.

**EIGHTEENTH CAUSE OF ACTION**

**Failure to Provide and Maintain Compliant Wage Statements**

**(Labor Code Sections 226(a) and 1198)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

201. Plaintiff incorporates the paragraphs above as though fully set forth herein.

202. At all relevant times herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked by each respective individual; number of hours actually worked; gross wages earned; and net wages earned. *See also,* IWC Wage Order ¶ 7.

203. During the relevant time period, Defendants have knowingly and intentionally provided Plaintiff with untimely, uniform, incomplete, and inaccurate wage statements. Specifically, Defendants violated sections 226(a)(1), 226(a)(2), and 226(a)(5), upon which Plaintiff repeatedly complained about to Mr. Farhi. Because Defendants did not pay her for all hours actually worked, denied her earned commissions, denied her meal and rest break premiums, Defendants did not list the correct amount of gross wages earned by Plaintiff in compliance with sections 226(a)(1) and 226(a)(2). For the same reason, Defendants failed to list the correct amount of net wages earned by Plaintiff in violation of section 226(a)(5).

SCHEIN LAW GROUP

Case 2:26-bk-12374-WB Doc 23 Filed 06/15/26 Entered 06/15/26 17:50:16 Desc Main Document Page 40 of 52

204. Defendants willfully failed to maintain accurate payroll records for Plaintiff showing the daily hours she actually worked and the wages paid thereto as a result of failing to record all hours that she worked, including, overtime hours.

205. In addition, Plaintiff failed to provide a timely wage statement to the Plaintiff each pay period.

206. California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Plaintiff in violation of section 1198.

207. Because Defendants violations of 226(a) and 1198 were committed against Plaintiff, Plaintiff is entitled to recover civil penalties pursuant to sections 226(e), 226.3.

SCHEIN LAW GROUP

## <u>NINETEENTH CAUSE OF ACTION</u>

**Failure to Pay all Compensation Due upon Discharge**

**(Violation of California Labor Code Sections 201 and 203)**

**(Against Defendants Zellij Gallery, Mr. Farhi, and DOES 1-10)**

208. Plaintiff incorporates the paragraphs above as though fully set forth herein.

209. California Labor Code Sections 201 and 203 require Defendants to pay all compensation due and owning to Plaintiff immediately upon termination. Labor Code Section 203 provides that if an employer willfully fails to pay all compensation promptly upon termination, as required by Sections 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.

210. Defendants willfully failed to pay Plaintiff all compensation due and owing to her on August 10, 2023, the day of her termination. As a result, Plaintiff is entitled to 30 days of waiting time penalties, plus attorneys' fees and costs of suit.

**<u>TWENTIETH CAUSE OF ACTION</u>**

**Unfair Business Practices**

**In Violation of Cal. Bus. & Prof. Code § 17200, et seq.**

**(Against Defendants Zellij Gallery and DOES 1-10)**

211. Plaintiff incorporates the paragraphs above as though fully set forth herein.

212. Defendants have engaged in Unfair Business Practices in violation of Business and Professions Code Sections 17200 et seq. by engaging in activities that are unlawful, unfair, and fraudulent as alleged herein.

213. As a proximate and legal result of Defendants' aforesaid wrongful conduct, Plaintiff has been harmed in that Plaintiff has suffered the loss of past and future wages and earnings, benefits, and such additional amounts of money Plaintiff would have received if Defendants had not terminated Plaintiff and engaged in unfair business practices. As a result of such wrongful termination and unfair business practices and its consequences, Plaintiff has suffered additional economic harm and damages, to be stated according to proof at trial.

**<u>DEMAND FOR JURY TRIAL</u>**

214. Plaintiff hereby demand a trial by jury.

**<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiff prays for judgment against Defendants and DOES 1 through 10, as follows:

(a) For economic damages for loss of past and future earnings, including, but not limited to earned and unpaid wages, penalties, earned but unpaid commissions, unreimbursed business expenses, sick pay not paid to her, improperly docked vacation pay,

SCHEIN LAW GROUP

as well as a loss of earning capacity, just promotions, advancement and employment benefits, past, current, and future medical care, other economic damages, including incidental fees and/or other costs, and/or other economic losses, all in excess of this Court's minimum jurisdictional limits and according to proof;

(b) For general damages for physical injuries, pain and suffering, mental and emotional trauma and anguish, and for the loss of enjoyment of the activities of life, according to proof;

(c) For attorneys' fees, as provided by applicable provisions of the FEHA, the California *Labor Code*, and/or other statutes, according to proof;

(d) For punitive damages, as against each named Defendant, according to proof;

(e) For costs of suit, and according to proof;

(f) For penalties as provided for by the California *Labor Code*, including sections 210, 225.5, 226.3, 558 for violations of California Labor Code sections 201, 204, 226(a), 226.7, 510, 512(a), and 1198.

(g) For an accounting;

(h) For prejudgment interest from the first date and highest rate allowed by law, and according to proof;

(i) For injunctive relief; and

(j) For such other and further relief as the Court deems just and proper.

///

///

///

SCHEIN LAW GROUP

Dated: December 22, 2023

SCHEIN
LAW GROUP

By: *Josh Schein*
JOSHUA D. SCHEIN
HELEN YOU
ATTORNEYS FOR PLAINTIFF,
EVERLY FITZGERALD

Dated: December 22, 2023

**SHERMAN LAW CORPORATION**

By: *Lisa Sherman*
LISA G. SHERMAN, ESQ.
ATTORNEYS FOR PLAINTIFF,
EVERLY FITZGERALD

SCHEIN LAW GROUP

| In re: Faissel Vincent Farhi Debtor(s). | CHAPTER: 13<br>CASE NUMBER: 2:26-bk-12374-WB |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**21241 Ventura Blvd. Suite 253 Woodland Hills, CA 91364**

A true and correct copy of the foregoing document entitled **MOTION OBJECTING TO CLAIM #8-1 OF EVERLY FITZGERALD C/O KURT RAMLO, RAMLO LAW; REQUEST CLAIM NOT BE PAID PENDING RESOLUTION OF THE ACTION; DECLARATION OF KEVIN T. SIMON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 19, 2026 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| **Nancy K Curry (TR)** | **inquiries@trusteecurry.com** |
| **United States Trustee (LA)** | **ustpregion16.la.ecf@usdoj.gov** |
| **Kevin T. Simon** | **kevin@ktsimonlaw.com** |
| **Ramlo Law** | **RamloLegal@gmail.com** |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On October 19, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 19, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy: Honorable Julia Brand 255 E. Temple Street, Suite 1382 / Courtroom 1375 Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 19, 2026 | Alyssum Gruenfeldt-Roy | /s/ Alyssum Gruenfeldt-Roy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

| In re: Faissel Vincent Farhi Debtor(s). | CHAPTER: 13<br>CASE NUMBER: 2:26-bk-12374-WB |
|---|---|

**CONTINUED SERVICE LIST**

**Debtor**
Faissel Vincent Farhi
1944 Argyle Avenue #2
Los Angeles, CA 90068

**Chapter 13 Trustee (Certified Mail)**
Nancy K Curry (TR)
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017

**United States Trustee (LA) (Certified Mail)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

**Everly Fitzgerald (PACER, Claim & CalBar) (Certified Mail)**
represented by Kurt Ramlo
Ramlo Law
15021 Ventura Blvd. #544
Sherman Oaks, CA 91403

**Schein Law Group (Claim) (Certified Mail)**
Attn: Joshua D. Schein
9401 Wilshire Blvd., Suite 750
Beverly Hills, CA 90210

**Sherman Law Corporation (Complaint) (Certified Mail)**
Attn: Lisa G. Sherman, Atty.
6300 Wilshire Blvd., Ste. 880
Los Angeles, CA 90048

**Attorney for Debtor (Adversary) (Certified Mail)**
David A Smyth
Law Office of David A Smyth
3478 Buskirk Ave Ste 1000
Pleasant Hill, CA 94523